JACKSON COUNTY, Missouri,
Respondent,

v.

MISSOURI STATE BOARD OF
MEDIATION, et al.,
Appellants.

No. 66273.

Supreme Court of Missouri,
En Banc.

May 29, 1985.

Mark S. Siedlik, Asst. Atty. Gen., Jefferson City, Scott A. Raisher, Kansas City, for appellants.

Gary Owens, John B. Williams, Kansas City, for respondent.

WELLIVER, Judge.

Section 105.510, RSMo 1978, of the Missouri Public Sector Labor Law bars police and deputy sheriffs, among others, from exercising the limited bargaining rights which the statute grants to other public employees. At issue in this case is whether employees of the Jackson County Department of Corrections designated as "corrections officers" constitute police officers or deputy sheriffs for purposes of the statute. The Missouri State Board of Mediation (Board) held that they were not and certified the corrections officers along with certain other employees of the Department as an appropriate bargaining unit. The Circuit Court of Jackson County reversed the Board's decision, but on appeal the Missouri Court of Appeals, Western District reversed the circuit court's judgment and ordered the Board's decision's reinstated. We ordered the cause transferred because of the general interest and impor-

tance of the question at issue. Mo. Const. art. V, § 10. We now reverse the judgment of the circuit court.

The present controversy began when the American Federation of State, County and Municipal Employees, hereinafter Union, petitioned the Board to designate an appropriate bargaining unit from among the employees of the Jackson County Department of Corrections and to recognize it as the unit's bargaining representative. Jackson County, hereinafter respondent, contested the petition, claiming that the corrections officers were in essence police or deputy sheriffs and therefore ineligible for membership in the bargaining unit under the terms of § 105.510.

The parties adduced evidence showing that the corrections officers were primarily responsible for the security and custody of the inmates confined in the county jail and transportation of the inmates to court appearances. It was further established that these functions had been performed by deputy sheriffs prior to the formation of a charter form of government in Jackson County in 1973. At that time, responsibility for supervising the jail facilities was transferred from the county sheriff to the newly created Department of Corrections.

. The Board found that, notwithstanding the historic association between jail guards and deputy sheriffs, corrections officers differed from deputies in terms of their duties and status. It noted that, unlike deputies, corrections officers are neither commissioned nor sworn to carry firearms, do not wear uniforms or badges (although they do wear an identification card), and are not charged with enforcing state law on a county-wide basis. The Board also found that corrections officers are not responsible for maintaining order, preventing and detecting crime and enforcing laws. Based on these findings, the Board concluded that the officers were not police or deputy sheriffs. The Board went on to establish a bargaining unit that included all full-time non-supervisory employees of the Department. As certified by the Board, the unit consisted of 168 employees, includ-

ing, among others, corrections officers, secretaries, clerks, case workers, cooks, custodians, laundry workers and elevator operators. Corrections officers made up the largest bloc of employees, totaling 102 in number.

After a majority of the unit's members voted to retain the Union as their bargaining representative, respondent filed this petition for review. The circuit court reversed and remanded, holding that the corrections officers fell within the statute's exclusion provision. On appeal, the Western District reversed the court's judgment. Relying substantially on the conclusions expressed by the Board, the court of appeals held that corrections officers could not be considered police or deputy sheriffs within the "plain and ordinary meaning" of those terms.

▇▇▇ In this appeal, we must defer to the Board's findings of fact insofar as they are supported by competent and substantial evidence. We are free, however, to independently determine the applicable law and to apply the law to the Board's findings. Section 536.140.3, RSMo 1978. *See Kansas City v. Missouri Com'n on Human Rights*, 632 S.W.2d 488, 490 (Mo. banc 1982). The Board contends the case turns on a mere factual inquiry with respect to the duties of the corrections officers.[1] We disagree. While we may be bound by the Board's largely undisputed findings pertaining to the corrections officers' duties and responsibilities, the legal conclusions drawn therefrom necessarily result from interpreting the exclusion provision in § 105.510 and applying the law as construed to the facts. It can hardly be doubted that the courts, no less than the Board, are competent to undertake that task. *See City of Cabool v. Missouri State Board of*

*Mediation,* 689 S.W.2d 51, 55 (Mo. banc 1985).

▇▇▇ Section 105.510 in relevant part provides:

Employees, except police, deputy sheriffs, Missouri state highway patrolmen, Missouri national guard, all teachers of all Missouri schools, colleges and universities, of any public body shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing.

Because the statute does not define either police or deputy sheriffs, the task of ascribing meaning to the terms falls to the courts. The Legislature presumably excluded police and deputy sheriffs from the scope of the statute after concluding that the bargaining rights granted therein would inhibit the discipline and strict impartiality demanded of law enforcement personnel. The Legislature may well have believed that "membership in [a union] might reasonably cause friction and dissention within the police force and create prejudice and favortism in the enforcement of the laws." *King v. Priest,* 357 Mo. 68, 206 S.W.2d 547, 555 (banc 1947). We think this legislative purpose can best be effectuated if the exclusion provision is interpreted to encompass those persons engaged in law enforcement who, regardless of job title, perform duties and functions substantially comparable to those performed by police and deputy sheriffs. Interpreting the statute in this manner is consistent with the Court's statement in *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35 (Mo.1969), that "except for teachers, the excluded class is that of police or those exercising police functions ..." *Id.* at 43.

---

1. The Board argues that:

   Just because the categories of police and deputy sheriffs are set forth in the aforementioned statute as job classification not allowed to collectively meet and confer with their public employers does not make this issue a question of law rather than a question of fact. Instead, it merely places an additional re-

   quirement upon the board to make a further factual determination ... as to whether or not these corrections officers may be included in an appropriate bargaining unit.

   *Compare City of Cabool v. Missouri State Board of Mediation,* 689 S.W.2d 51, 55 (Mo. banc 1985).

Though the term has been variously defined, the authorities generally agree that "police" refers to an organized civil force for maintaining public order, preventing and detecting crime and enforcing the laws. *See Wyndham v. United States*, 197 F.Supp. 856 (E.D.S.C.1961); *Police Pension Board of the City of Phoenix v. Warren*, 97 Ariz. 180, 398 P.2d 892 (1965); *Burke v. State*, 76 Ga.App. 612, 47 S.E.2d 116, 126 (1948); *Tezeno v. Maryland Casualty Co.*, 166 So.2d 351 (La.App.1964); Black's Law Dictionary 1316 (4th Rev.Ed. 1968). In *St. Louis County Police Officers Union Local 844 v. Gregory*, 622 S.W.2d 713 (Mo.App.1981), it was argued that municipal "public safety officers" were not police for purposes of the statute because they also served as firefighters and emergency medical technicians. The Eastern District properly held that the officers came within the exclusion provision, noting that they had been licensed by the state as police officers, routinely performed patrol and other police duties, and served under the command of a police lieutenant.

In the case at bar, the evidence demonstrates that the corrections officers perform essentially guard duties: they supervise the inmates housed in the jail and escort inmates to court appearances and state institutions to which they have been assigned. While it appears that corrections officers may indeed perform certain limited police functions, we are not convinced they possess sufficient attributes of police or deputy sheriffs to warrant bringing them within the bar of the statute. Aside from supervising the inmates under their charge, the corrections officers are not empowered to engage in any police work, either by investigating crimes or enforcing general laws. Nor do they have the status or training of police personnel. Corrections officers do not wear uniforms, they are not sworn or commissioned, and they do not carry a firearm except when transporting a

prisoner outside the jail. Section 66.250, RSMo 1978, requires police officers in first class counties with charter forms of government to obtain a minimum of 600 hours of police training.[2] The Director of Jackson County's Corrections Department testified that although the Department attempted to put corrections officers through a fifty-two hour training course, few had completed more than twenty or thirty hours of the course. The fact that sheriff's deputies once served as jail guards in Jackson County is of little consequence inasmuch as corrections officers have been divorced from the sheriff's office for more than a decade and have lost all the collateral authority and attributes of deputy sheriffs.

Respondent makes much of isolated statements in two decisions which equate jail guards with police officers. *See State ex rel. Priest v. Gunn*, 326 S.W.2d 314, 325 (Mo. banc 1959); *State v. Jackson*, 500 S.W.2d 306, 310 (Mo.App.1973). The statements were appropriate under the peculiarities of each of those cases, but neither case posed the precise issue that now confronts us nor did the court in either case undertake an in-depth examination of the duties of jail guards vis-a-vis police officers. Having undertaken that task in this case, we are satisfied that the duties of the corrections officers are not substantially comparable to those of police officers or deputy sheriffs.

Respondent claims that the Board's decision will impair the order and safety of the jail and the efficiency of the Department's work force. We see no basis for such dire predictions. We take notice of the fact that unions have represented corrections officers in our state prisons for a number of years. If our state prisons, where the task of maintaining order and safety is no doubt more difficult than in county jails, can operate with an organized work force, we see no reason why the safety of county jails should suffer if corrections officers

**2.** *See also* § 590.105, RSMo 1978 (establishing mandatory training standards for "peace offi-
cers").

are permitted to exercise the very limited bargaining rights authorized by § 105.510. We therefore hold that the corrections officers are not police or deputy sheriffs for purposes of § 105.510 and that the Board properly included them in the bargaining unit.

Respondent urges that the circuit court's decision reversing the Board may nevertheless be affirmed on the ground that certification of the bargaining unit would lead to "over fragmentation" of bargaining units among county employees. Respondent contends that the establishment of bargaining units based on a "community of interest" concept as applied by the Board results in numerous units which impede the County's ability to establish county-wide personnel practices. Section 105.525 expressly authorizes the Board to decide "[i]ssues with respect to appropriateness of bargaining units ..." While the Board's authority to decide such questions remains subject to judicial review, we see no reason to disturb its decision in this case.

The judgment of the circuit court is reversed. The cause is remanded with directions to reinstate the decision of the State Board of Mediation.

All concur.