**MONROE COUNTY NURSING HOME DISTRICT d/b/a Monroe Manor, Appellant,**

v.

**The MISSOURI DEPARTMENT OF SOCIAL SERVICES, and The Administrative Hearing Commission, Respondents.**

**No. WD 41437.**

Missouri Court of Appeals, Western District.

Aug. 22, 1989.

Motion For Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1989.

Application to Transfer Denied Nov. 14, 1989.

Harvey M. Tettlebaum, Jefferson City, for appellant.

Donald B. Kammerer (argued), Woodie J. Curtis, Jr., Jefferson City, for respondents.

Before BERREY, P.J., MANFORD, J., and NUGENT, C.J.

NUGENT, Chief Judge.

Petitioner Monroe County Nursing Home District (Monroe) appeals from the circuit court's judgment reversing in part and affirming in part the decision of the Administrative Hearing Commission. The court reversed the commission's decision to grant Monroe a $1.25 per diem increase in medical compensation that the commission had granted based on its finding of a change in Monroe's case mix. The court affirmed the commission's decision that Monroe had failed to establish any significant and extraordinary change in circumstances that would warrant a further increase. The commission's decision arose from its review of the respondent Missouri Department of Social Service's denial of increased compensation on either of the proposed grounds.

Monroe argues on appeal that sufficient evidence supported the commission's finding of a changed case mix and that Monroe's purchase of a health insurance plan for its employees amounted to an extraordinary expense entitling it to increased compensation. We reverse the judgment of the circuit court.

We review the decision, not of the circuit court, but of the Administrative Hearing Commission. *City of Cabool v. Missouri State Board of Mediation*, 689 S.W.2d 51, 53 (Mo.1985) (en banc). In that review, we will determine whether substantial evidence before the commission reasonably supports its findings, but we shall not substitute our judgment for the commission's judgment. *Barnes Hospital v. Missouri Commission on Human Rights*, 661 S.W.2d 534, 535 (Mo.1983) (en banc). Substantial evidence means competent evidence that, if believed, would have probative force upon the issues. *Citizens for Rural Preservation v. Robinett*, 648 S.W.2d 117, 124 (Mo.App.1982). The commission's legal conclusions do not similarly bind us. We may draw from its findings our own conclusions of law. *Jackson County v. Missouri State Board of Mediation*, 690 S.W.2d 400, 402 (Mo.1985) (en banc). Since the respondent department presented no evidence, we review only Monroe's evidence.

Monroe operates a 120–bed nursing home known as Monroe Manor in Paris, Missouri. In 1981 it received certification under § 198.045[1] to participate in the state-administered Medicaid program. Monroe's initial per diem reimbursement for Medicaid patients amounted to $25.20, based on its total allowable patient care expenses divided by patient days. A formula allows increases in the rate of reimbursement based on the original rate. At the time of the hearing, Monroe received a per diem rate of $32.15.

The department's regulations stipulated as a condition of rate reconsideration that a provider of medical services under the Medicaid plan may apply for an adjustment in its base rate under particular circumstances. The sections of 13 C.S.R. 40–81.-081(7)(B)(1)(1983) relevant to Monroe's application provided for adjustments for "changes in costs due to changes in the level of care or case mix" or for additional costs as a result of "significant and extraordinary circumstances...."

At the time of Monroe's certification in 1981, it offered no health insurance plan to its employees. Norma Gritton, Monroe's administrator, testified that the absence of such a plan made retention of personnel difficult for the facility. The employees most often left to find jobs with a competitor who provided health insurance. As a result of its high turnover, Monroe experienced significant retraining expenses, as high as $1,500 to $2,000 per employee.

In 1983 Monroe purchased group health insurance for its employees. At the time of the hearing the total cost of that program had approached $250,000. The 1987 cost amounted to $2.08 per diem. Ms. Gritton testified that the facility had experienced considerably less employee turnover after the health insurance plan began. She also noted a reduced rate of absenteeism and a general improvement in the health of the staff.

The improved health of the staff stands in contrast to the condition of patients admitted to Monroe Manor in recent years. Ms. Gritton testified that Medicare guidelines have led hospitals to release elderly patients earlier and, consequently, in a more debilitated physical state. The poorer condition of new residents placed additional demands on the Monroe Manor nursing staff. In response to those demands, Monroe had to adjust the staff hours, add nurses and develop a physical rehabilitation department. The petitioner supported its claim of a changed case mix with an exhibit detailing the various time-consuming diagnoses of newly admitted residents. Monroe also presented the testimony of Joyce Riedesel, its director of nursing. Ms. Riedesel had worked at the facility since 1973. She testified that she had observed much more debilitation in recently admitted resi-

1. All sectional references are to Revised Statutes of Missouri, 1986.

dents and that such residents required greater nursing care.

The Department of Social Services denied the petitioner's original request, explaining that because Monroe's case mix had not changed by nine points or thirty percent that it did not qualify for a rate increase on that basis. The department further informed Monroe that its request did not qualify for an increase based on extraordinary circumstances, in that its cost of providing health insurance benefits to its employees did not amount to a cost increase beyond the facility's control or a circumstance unique to Monroe Manor.

The Administrative Hearing Commission found inconclusive Monroe's statistical report on its changes in case mix. It also noted that the department had failed to promulgate standards by which the tribunal could judge whether such a change had occurred.[2] The commission concluded that the record as a whole showed that the petitioner serves a more debilitated clientele and, therefore, supported a finding that the change in case mix entitled Monroe to a $1.25 increase in its per diem reimbursement rate.

The commission also found that the petitioner had incurred a significant cost by providing its employees with health insurance benefits. It recognized that Monroe provided such benefits to retain employees who would otherwise leave the facility to find jobs with other employers who provided health plans. The insurance program allowed Monroe to reduce staff turnover and avoid the resulting high costs of training new employees.

Nevertheless, the commission agreed with the Department of Social Services that the cost of providing employee benefits did not amount to an extraordinary circumstance that would warrant an increased reimbursement rate. It followed a definition of "extraordinary" that arose in *Courtney v. Ocean Accident and Guaran-*

*ty Corp.*, 346 Mo. 703, 142 S.W.2d 858 (1940), as something "beyond or out of the common order or rule; not of usual, customary or regular kind."

Both parties petitioned the circuit court for review of the commission's order. The court affirmed the commission's finding that no extraordinary circumstances existed. It reversed the order providing an increased reimbursement rate for a change in case mix, finding that no substantial evidence supported the commission's decision. Monroe Manor now appeals.

■ Monroe first asserts that substantial evidence supports the commission's finding of a changed case mix. The department disagrees, pointing to the commission's finding that Monroe's statistical report on case mix was inconclusive. The commission also found, however, that the record supported a change in Monroe's case mix. Indeed, the commission's finding refers to ample evidence that current Medicare regulations cause hospitals to release patients in worse physical condition than in prior years. As a result, Monroe Manor receives residents who require additional nursing care. Monroe has incurred additional expenses in response to the more demanding case load. We agree with the commission that a change in Monroe's case mix entitles it to a $1.25 increase in its per diem reimbursement rate.

■ On the other point, we disagree with the commission's decision that Monroe's purchase of medical insurance for its employees did not amount to a significant and extraordinary cost. The commission noted in its findings that the petitioner provided the benefit to avoid losing its employees to other employers who already provided health insurance. No dispute exists about that finding. (In fact the department presented no evidence.) The commission erred when it concluded as a matter of law that Monroe's cost of overcoming significant employee turnover did not amount

**2.** The Department's nine point, thirty percent standard arose from a proposed amendment to the applicable regulations. Because the Department declined to adopt the standard, it has no binding effect. *See* 11 Mo.Reg. 817 (April 15,

1986) (explaining the reasons for rejecting the proposed standard); § 536.021.6 (regulations not adopted according to described procedure are void).

to an extraordinary expense. *See Central Bank of Clayton v. State Banking Board of Missouri,* 509 S.W.2d 175, 190 (Mo.App. 1974) (in the absence of a dispute over the facts before the agency the issue became one of law). It drew that conclusion from its interpretation of the Missouri Supreme Court's definition of "extraordinary" in *Courtney v. Ocean Accident and Guarantee Corp., supra.* But in this latter day, we may say without hesitation that an employer that does not provide its employees with health insurance indeed falls "out of the common order or rule." Thus, the absence of a health insurance benefit plan amounts to an extraordinary circumstance.

To hold that a medicaid provider cannot be reimbursed for the cost of providing its employees with health insurance, and thereby discourage that practice, would create an anomalous situation. The medicaid program exists to provide medical care for those in need. Such a program should be administered in a manner that permits employees who provide such medical care an opportunity to obtain it for themselves. Extraordinary circumstances existed when the petitioner did not provide its employees with health insurance. We conclude that the regulation entitles the petitioner to reimbursement for the expense it incurred in overcoming that deficiency.

Accordingly, we reverse the circuit court's judgment and direct that the court remand the case to the Administrative Hearing Commission for a determination of the appropriate increase in the rate of reimbursement.

All concur.