**SELLS REST HOME, INC.,**
Petitioner–Appellant,

v.

**DEPT. OF SOCIAL SERVICES, and**
**Mo. Div. of Medical Services,**
Defendants–Respondents.

No. WD 44974.

Missouri Court of Appeals,
Western District.

April 7, 1992.

Harvey M. Tettlebaum, Jefferson City, for petitioner-appellant.

Linda M. Shine, Jefferson City, for defendants-respondents.

Before LOWENSTEIN, C.J., and HANNA and SMART, JJ.

LOWENSTEIN, Chief Judge.

Appellant Sells Rest Home, Inc. (Sells), appeals from the Administrative Hearing Commission's (Commission) denial of Sells' request for an increase in its Medicaid per day reimbursement rate. This court initial-

ly notes that the state and federal regulations under which this case was decided by the Commission are no longer in effect, being superseded by recent revisions of the Medicaid regulations at both the state and federal level. Therefore, this case affects only reimbursement rulings made under the guidelines in effect in 1990, and has little or no precedential value.

The focus of this case is that a nursing home may be reimbursed under the Medicaid program for costs of doing business as a nursing home, nursing personnel salaries being one such cost. In order to take part in the reimbursement program, the homes are required to be licensed under state and federal guidelines and to follow state and federal regulations regarding administration, nursing services, patient care, physical environment, etc. There are two license levels important in this case, "intermediate care" and "skilled care," each with requirements spelled out carefully in the state and federal guidelines. Once a nursing home becomes part of the Medicaid reimbursement program, the home may apply for a rate increase under several circumstances, one of which is a change in the level of care the home is licensed to give its residents.

Sells operates a 94 bed nursing home in New Madrid County, currently serving more than 60 patients. The facility, originally opened in 1971, was certified (i.e. licensed) as an intermediate care facility under state and federal guidelines, and provided long-term residential care. Sells has participated in the Missouri Medicaid program since opening. In June of 1989, Sells was receiving more acutely ill patients, and felt it should raise its standard of care. Sells therefore decided to become certified as a skilled nursing facility, a higher level of certification and one designed to provide these acutely ill patients with necessary care. To change its level of care under the state and federal guidelines, Sells was obliged to change its operation somewhat. Of interest to this case, it added nursing

personnel in June of 1989, increasing both its registered nurse (RN) and licensed practical nurse (LPN) staffing. The major changes involved having an RN on the day shift seven days a week, and doubling the LPN staff on the evening shift.

Having been certified as a skilled nursing facility, Sells then applied for a Medicaid rate increase, under the state rule allowing for increases in per day rates for costs "directly related to a change in level of care provided by a facility," 13 CSR 70–10.010(7)(D)1.B (1989). The Missouri Department of Medical Services granted Sells a per day increase of $1.31; none of this increase, however, was related to RN or LPN salaries. Sells then filed a complaint with the Commission, alleging that reimbursement for the nursing salaries should have been included in its increase. The per day rate increase that Sells requested before the Commission was $2.46: $1.43 corresponding to RN salary, and $1.03 corresponding to LPN salary.[1]

The Commission, after finding facts and making conclusions of law, granted Sells a $0.41 increase,[2] corresponding to RN salary, and denied any increase for LPN salary. Sells has appealed, first to the circuit court, and now here, requesting an additional $1.02 in RN salary reimbursement, and $1.03 in LPN salary reimbursement. The sole question confronting this court in the four points on appeal is whether, under the state and federal guidelines as they then existed, Sells satisfied its burden of proving that these RN and LPN salaries were "directly related" to the upgrade in level of care from an intermediate care facility to a skilled nursing facility.

This court notes that there are two sets of state and federal regulations important to this case: 1) the Missouri regulation governing changes in Medicaid rate reimbursement in effect in 1990, found in 13 CSR 70–10.010, stating that adjustments in a per day rate may be made for a change in level of care for "those costs directly relat-

1. The total reimbursement requested of the Commission and the RN figure were not provided by the parties; these figures represent the court's calculations.

2. Again, this figure is from this court's calculations.

ed to a change in the level of care provided by a facility," subpart (7)(D)1.B, and that rate determination in general is based on a "determination of reasonable and adequate reimbursement levels for allowable cost items described in this rule which are related to ordinary and necessary care for the level of care provided for an efficiently and economically operated facility," subpart (7)(F); and, 2) those applicable state and federal nursing personnel regulations in effect in 1990 addressing skilled nursing facilities, found in 13 CSR 15–14.042 (Missouri), and in 42 CFR 405 (federal): [3]

State skilled care requirements

| | |
|---|---|
| *RN on day shift 7 days a week | —13 CSR 15–14.042(35) |
| *Full-time Director of Nursing (may be day RN) | —13 CSR 15–14.042(35) |
| *LPN (with RN on call) or RN on evening and night shifts | —13 CSR 15–14.042(35) |
| *Nursing staff sufficient to meet needs of residents | —13 CSR 15–14.042(37) |

Federal skilled care requirements

| | |
|---|---|
| *State skilled care license | —42 CFR 405.1120(a)(1) |
| *RN on day shift 7 days a week | —42 CFR 405.1124(a) & (c) |
| *Full-time Director of Nursing (may be day RN) | —42 CFR 405.1124(a) |
| *Assistant director of nursing if Director has "other institutional duties" | —42 CFR 405.1124(a) |
| *Nursing staff sufficient to meet needs of residents | —42 CFR 405.1124(c) |

---

This court also notes the following decisions guiding review of this case: 1) the appellate court reviews the decision of the Administrative Hearing Commission, not the circuit court, *City of Cabool v. Missouri State Board of Mediation*, 689 S.W.2d 51, 53 (Mo. banc 1985), 2) this court may not substitute its judgment for that of the Commission, but will determine whether substantial evidence reasonably supports the Commission's findings of fact, *Barnes Hospital v. Missouri Commission on Human Rights*, 661 S.W.2d 534, 535 (Mo. banc 1983), and substantial evidence means competent evidence, that, if believed, would have probative force upon the issues, *Citizens for Rural Preservation v. Robinett*, 648 S.W.2d 117, 124 (Mo.App. 1982), and, 3) as to conclusions of law, the Commission's conclusions do not bind this court, which may draw its own conclusions from the findings of fact, *Jackson County v. Missouri State Board of Mediation*, 690 S.W.2d 400, 402 (Mo. banc 1985).

*I. Satisfying a general burden of proof*

■ The Commission concluded that Sells had not satisfied its burden of proving entitlement to the Medicaid reimbursement because there was no showing of when the additional nursing personnel were hired. The Commission's logic appears to be that without such proof, Sells could have had adequate personnel to achieve skilled certification, without adding personnel, and therefore the salaries of these personnel would not be "directly related" to the change from intermediate to skilled certification.

Two points refute the Commission's determination. First, the testimony at the hearing was that Sells decided to upgrade its certification in June of 1989, increased its LPN staffing in June, 1989, and hired a Director of Nursing in August, 1989. Moreover, Sells' exhibits show that staffing in 1987 differed from staffing in 1989, that it currently employs nursing personnel sufficient to meet the minimum guidelines for skilled certification, that it received skilled certification, and that it did not previously

**3.** Nursing homes generally have three shifts per 24 hour period: day (7:00 a.m. to 3:00), evening (3:00 to 11:00), and night (11:00 to 7:00). Staff members in a skilled nursing facility are registered nurses (RN), licensed practical nurses (LPN), and a Director of Nursing (Director).

receive reimbursement for the personnel hired between June and August of 1989. Oddly, the Commission's findings of fact do state that the LPN's were hired in June 1989, and that the Director of Nursing was hired in August of 1989. Given the Commission's own findings, and the uncontroverted evidence of Sells, this court finds that there was substantial evidence to show when the nursing personnel were hired, *Barnes Hospital,* 661 S.W.2d at 535, *Jackson County,* 690 S.W.2d at 402. In any event, it should make no difference *when* the additional personnel are hired which are now necessary to a certification change, since those personnel are not included in the previous reimbursement rate anyway. This court would not discourage a nursing home from hiring nursing personnel above that minimum required by the guidelines set up for purposes of Medicaid reimbursement. Sells did not fail in its burden of proving that the personnel it hired were "directly related" to its change in level of care under 13 CSR 70–10.-010(7)(D)1.B (1989), by virtue of inadequate proof of time of hiring.

### II. The Director of Nursing's other institutional duties

■ The Commission denied Sells' request for $1.02 per day increased reimbursement for RN salary, concluding that since Sells did not show the extent of the Director's "other institutional duties," there was no way of calculating the need for an assistant director of nursing under 42 CFR 405.1124(a). This proof is irrelevant to the issue. The regulations require a full-time Director, and yet an assistant is only required so that the equivalent of a full-time Director is always on duty during a particular shift. Therefore, the amount of time spent by the Director on "other institutional duties" is irrelevant, since Medicaid is only reimbursing for one full-time Director, be it the Director or the assistant who actually works the hours.

However, this court still denies additional reimbursement for RN salary, and may do so through a legal conclusion different from that reached by the Commission, *Jackson County,* 690 S.W.2d at 402. The

federal guidelines require an RN on the day shift seven days a week; under the regulations, the Director (or assistant) may be this day-shift RN, presumably for the five days a week the Director is working. Therefore, the minimum RN salary that is directly related to the skilled certification is an RN salary corresponding to an RN on the day shift seven days a week. From the record, it is apparent to this court that Sells is currently being reimbursed for such a seven-days a week RN: a) prior to requesting a rate increase, Sells was reimbursed for a five-day a week RN, and, b) the Commission then gave Sells a $0.41 RN increase which corresponds to an additional two-days RN salary. The requested $1.02 increase in Sells' Medicaid reimbursement rate relating to an RN salary is denied.

### III. Sufficient LPN's to meet resident needs

■ Sells maintained in the hearing before the Commission that it was entitled to a $1.03 increase in its reimbursement rate based on LPN salary. Sells' facility is arranged in two main parallel corridors connected by a lobby and dining room, each corridor having a nurses station, and one corridor having 17 rooms, the other 32 rooms. The nursing stations, placed in the middle of the areas they serve, are 324 feet apart, and one cannot see from one station to the other, nor can residents in one corridor be watched from the other station. The Commission denied Sells' request for increased LPN reimbursement by stating that the LPN need was related to a design feature of the facility and therefore not an allowable cost under the regulations, since Sells was operating an "inefficient" facility. The Commission went on to state that a need for the LPN's based on the greater care necessary for skilled care patients was not "directly related" to Sells' change from intermediate to skilled care, but rather to the admission of sicker patients. This court disagrees with the Commission's legal conclusions, *Jackson County,* 690 S.W.2d at 402.

First, the Medicaid reimbursement rates are determined by looking at allowable

costs "related to ordinary and necessary care *for the level of care provided* for an efficiently and economically operated facility," 13 CSR 70–10.010(7)(F) (emphasis added). Therefore, the Commission's misplaced adherence to an "objective" standard of efficiency will not be upheld, as the regulations themselves imply that what is efficient is viewed from the perspective of the level of care provided. The Commission did not make a factual finding that Sells' facility was inefficient; in fact, Sells' Medicaid reimbursement with the $1.03 LPN salary reimbursement that it asks for here would still put it $4.48 below the 1986 rural skilled care mean reimbursement rate. This court, under *Barnes Hospital,* 661 S.W.2d at 535, and *Robinett,* 648 S.W.2d at 117, finds no substantial and competent evidence to support an implied finding of inefficiency. Sells testified through its expert witness that to meet the needs of its residents requiring skilled care, it needed to have LPN staffing at each of its two nurses stations during the day and evening shifts. This court finds substantial and competent evidence before it, *Barnes Hospital,* 661 S.W.2d at 535.

Second, the Commission apparently believes that actually giving the existing patients in Sells' facility "skilled care" is not a requirement of skilled certification. This court disagrees. The regulations are clear in that the nursing needs of the residents are to be met by a skilled facility, 13 CSR 15–14.042(37) and 42 CFR 405.1124(c), and Sells ought to be reimbursed for a level of care based on the needs of the patients it has and the level of care it is certified to give. The Commission felt that to address a need for additional LPN's, Sells should apply for a rate increase under a "change in case mix," 13 CSR 70–10.010(7)(D)1.C (1989); however, if Sells has upgraded its level of care to skilled because it wants to care for the increasingly ill residents in its home, than Sells should be reviewed for all allowable costs based on its skilled certification change, *especially* such an elemental requirement as "needs of the residents." To hold otherwise would require a claimant to apply under a myriad of rate reconsideration provisions in order to strike the one which appeals to the Commission's fancy in a particular case. This court may draw its own conclusions of law in this case, *Jackson County,* 690 S.W.2d at 402, and concludes that the letter and spirit of the Medicaid reimbursement guidelines in effect in 1990, call for approval of Sells' LPN salary reimbursement request. This ruling is consistent with the expert testimony presented by the respondents, Department of Social Services and Missouri Division of Medical Services.

Sells' point on appeal regarding LPN staffing as an allowable cost is granted, and the cause remanded to the circuit court to order the Commission on remand to direct the respondents to grant $1.03 Medicaid rate reimbursement corresponding to Sells' LPN salaries. The judgment is affirmed as to the denial of reimbursement for RN salary. The cause is affirmed in part, reversed in part, and remanded.