SUNSET RETIREMENT HOMES, INC.,
d/b/a Sunset Nursing & Retirement
Home, Appellant,

v.

DEPARTMENT OF SOCIAL SERVICES
and Division of Legal Services,
Respondent,

Missouri Division of Medical
Services, Defendant.

WD 45133.

Missouri Court of Appeals,
Western District.

April 28, 1992.

Harvey M. Tettlebaum, Jefferson City, for appellant.

Linda M. Shine, Mo. Dept. of Social Services, Jefferson City, for respondent.

Before LOWENSTEIN, C.J., P.J., and SHANGLER and SMART, JJ.

SHANGLER, Judge.

Sunset Nursing Homes, Inc. appeals the decision of the Administrative Hearing Commission to deny its full request for an increase in its Medicaid per diem reimbursement rate. The decision of the Commission was affirmed by the circuit court of Cole County. Our review is of the AHC decision. *City of Cabool v. Missouri State Bd.*, 689 S.W.2d 51, 53 (Mo. banc 1985).

Sunset Retirement Homes, Inc. [Sunset] operates the Sunset Nursing and Retirement Home in Union, Missouri. Sunset has participated in the Missouri Medicaid program since 1974, originally as an intermediate care facility [ICF] and, since 1989, as a combined skilled nursing facility [SNF] and intermediate care facility. It was certified as an SNF on August 9, 1989. The facility has 120 beds, 91 of which are skilled certified. The facility is on one level with a north wing and a south wing, each 184 feet from the other. Sunset has 15 rooms that are licensed but not certified to participate in the Medicaid program. The facility has skilled certified residents in each wing who require close nursing supervision. Each nurse's station has equipment to register patient calls through a communication system.

A nursing facility that has changed its level of care, as did Sunset from ICF to ICF/SNF, may apply for an increase in its Medicaid reimbursement by application to the Division of Medical Services of the Department of Social Services. On August 7, 1989, Sunset submitted to the agency an application with items of specific costs to show a requested rate increase of $10.39 per diem. On December 21, 1989, Sunset was granted an increase of $3.24 per diem retroactive to August 9, 1989. That was the date on which the Department certified 91 beds at Sunset to give skilled care at the facility and changed the level of care Sunset was certified to give to ICF/SNF. In order to meet that change in its level of care, Sunset was required to meet certain federal and state regulations that govern the standards for a skilled nursing facility. The staffing requirement for SNF certification was that professional care be provided around the clock, seven days a week. Sunset came into compliance with these requirements by May of 1989. The certification of Sunset to ICF/SNF followed on August 9, 1989.

Sunset made its application for increase in its Medicaid per diem reimbursement under agency regulation 13 CSR 70–10.-010(7)(D):

(D) Rate reconsideration

1. The committee may review the following conditions for rate reconsideration:

A. Those costs directly related to a change in a facility's case mix;

B. Those costs directly related to a change in the level of care provided by a facility, whether the change was made voluntarily or involuntarily. The

following changes in level of care may result in a change in a facility's reimbursement rate: ICF only to SNF/ICF; ICF only to SNF only; SNF only to SNF/ICF; SNF only to ICF only; SNF/ICF to ICF only, or SNF/ICF to SNF only; and

C. Requests for rate reconsideration which the director, in his/her discretion, may refer to the committee due to extraordinary circumstances contained in the request and as defined in subparagraph (4) A)3.E.

Sunset applied for rate reconsideration under § 13 CSR 70–10.010(7)(D)1.B of the regulation for reimbursement of "[t]hose costs directly related to a change in the level of care provided" by that facility.

In order to change its level of care to ICF/SNF under the regulatory guides, Sunset had to meet the staffing requirements of both state and federal regulations. State agency regulation 13 CSR 15–14.042(35) specifies:

(35) Licensed Nursing Requirements; Skilled Nursing Facility.

(A) The director of nursing shall be a registered nurse. II

(B) A registered nurse shall be on duty in the facility on the day shift. Either a licensed practical nurse or a registered professional nurse shall be on duty in the facility on both the evening and night shifts. II

(C) A registered nurse shall be on call during the time when only a licensed practical nurse is on duty. II

Although the state certification regulation requires only a licensed practical nurse on both the evening and night shifts, the federal regulation 42 CFR § 405.1124 imposes still other staffing standards:

(b) Standard. Charge nurse. A registered nurse, or a qualified licensed practical (vocational) nurse, is designated as charge nurse by the director of nursing services for each tour of duty, and is responsible for supervision of the total nursing activities in the facility during each tour of duty. The director of nursing services does not serve as a charge nurse in a facility with an average daily total occupancy of 60 or more patients. The charge nurse delegates responsibility to nursing personnel for the direct nursing care. . . .

(c) Standard. Twenty-four nursing services. The facility provides 24–hour nursing services which are sufficient to meet total nursing needs and which are in accordance with the patient care policies developed as provided in § 405.-1121(1). . . . Nursing personnel, including at least one registered nurse on the day tour of duty 7 days a week. . . . are assigned duties consistent with their education and experience and based on the characteristics of the patient load.

In order to bring itself into compliance with the regulations that govern skilled care facilities, Sunset began to provide a LPN on duty on each shift. It was their evidence that in order to meet the total nursing needs of the skilled nursing residents in the two-winged facility, Sunset requested reimbursement for the full time equivalent of 2.8 licensed practical nurses, although the facility had actually added 3.8 LPNs.

Sunset has a registered nurse who serves as the director of nursing as required by the SNF federal regulations. Sunset also has a registered nurse who serves as the assistant director of nursing, as well as a registered nurse on call. That is because 48% of the time of the registered nurse who serves as director of nursing was spent on duties not related to the skilled portion of the facility. Federal regulation 42 CFR 405.1124(a) provides: "If the director of nursing services has other institutional responsibilities, a qualified registered nurse serves as her assistant so that there is the equivalent of a full-time director of nursing services on duty." Moreover, subsection (b) of that federal regulation prevents a director of nursing from serving as a charge nurse one in charge of a wing of a nursing facility—if the facility has an average daily total occupancy of 60 or more patients. Sunset has an average daily total occupancy of 60 or more patients.

The Administrative Hearing Commission determined that the cost of .3 additional LPNs was directly related to the change in the level of care and awarded Sunset an increase of $.17 reimbursement per patient per day. The Commission also determined Sunset did not prove that the director of nursing had "such an amount of responsibilities other than those listed [in 42 CFR 405.1124(a)] which required the hiring of an assistant," and denied reimbursement for an assistant director of nursing.

It is the stipulation of the parties on the hearing before the Commission that the only reimbursement costs in issue are those for a registered nurse as assistant director of nursing and for two additional licensed practical nurses for the Sunset facility. Those are also the costs in issue on this appeal. It is to be noted that not in issue are the costs for a registered nurse as director of nursing and weekend registered nurse coverage. The reimbursement of those costs was allowed by the Department "as directly related to the change in the level of care" for which Sunset was certified.

Sunset raises six separate points on appeal. There remain nevertheless only two issues on appeal, as at the hearing before the Commission: the denial of full cost reimbursement for two additional licensed practical nurses and for a registered nurse who serves as assistant director of nursing. We address them in terms of the findings of fact and conclusions of law entered by the Commission, and upon which the decision of the Commission rests.

### THE TWO ADDITIONAL LICENSED PRACTICAL NURSES

The full reimbursement for the cost of two additional licensed practical nurses was denied by the Commission on several related grounds, but on one basic finding of fact: "The facility's base rate pays it for 3.9 LPNs. The facility must have 4.2 LPNs to comply with applicable regulations." The decision of the Commission to allow Sunset .3 more LPN than already included in its rate [$.17 more per diem patient care] derives from that finding.

The "applicable regulations" that the finding alludes to, presumably, are federal regulation 42 CFR 405.1124 and counterpart state regulation 13 CSR 15–042(35)(B). The 4.2 LPNs comprise the number of licensed nurses required for minimum compliance with the seven day per week, round the clock, staffing requirements of the regulations.

■ Sunset argues that there is no regulation that imposes a minimum staffing ratio to determine the cost increases of changes necessary for a facility to meet the certification standards for a higher level of care, and therefore the Commission finding rests on an invalid premise of law. And indeed, as the parties acknowledge, a published proposed amendment to rate reconsideration regulation 13 CSR 70–10.-010(7)(D) to the effect that only the cost increases to meet *minimum certification standards* for a higher level of care would be allowed did not include that terminology when adopted. Of course, the Commission may not premise an adjudication on a policy not adopted as a regulation by the agency. *Missouri State Div. of Family Servs. v. Barclay*, 705 S.W.2d 518, 521[4] (Mo.App. 1985); *see also* § 536.021.

The Department responds that the cost of 4.2 LPNs found by the Commission as the staffing required to meet the regulatory standards for certification to the higher level of care, whether or not "minimal," was the only cost the evidence shows was *directly related to a change in the level of care* and therefore the only cost reimbursable under 13 CSR 70–10.010(7)(D). That was the express finding by the Commission.

To that, Sunset argues that the Commission finding and decision that denies the facility the cost of two additional LPNs completely overlook the needs of these higher-care residents as well as the regulations that require attention to them. The Commission concluded that contention by the determination:

We agree that skilled care residents' needs may be more costly. We agree that State licensing and federal certification regulations require that an operator

meet the residents' needs. However, the recent presence of skilled care residents at Sunset's facility is a change in case mix. The Medicaid plan provides that an operator may have a rate adjustment for a change in case mix as a ground separate from that of a change in level of care. 13 CSR 70–10.010(7)(D)1.A. and B., respectively. The former refers to actual patient needs while the latter refers to certification level. A facility may obtain a higher certification and deserve a rate increase for costs directly related to such change but have no skilled patients and, therefore, no costs related to their care. We will not construe these provisions to be redundant. Sunset has not applied under the case mix provision.

■ Paragraph A of the regulation the Commission cites provides for rate adjustment for costs directly related to a change in the "case mix" of a facility. The term "case mix" is given no definition by any regulation. The Commission gives it the meaning of "actual patient needs," and distinguishes that ground of rate reconsideration "as a ground separate from that of a change in the level of care." Federal regulations, however, do not employ the term "case mix" as a measure of "actual patient needs." [1] A patient care plan to meet the "total nursing needs of all patients" is made a condition of certification as a skilled nursing facility and participation in the Medicaid program. See 42 CFR § 405.-1124. Whatever the functional distinction the state regulation on rate reconsideration intends between the change in the level of care and change in the case mix, the distinction the Commission imposes is not consonant with the federal regulation on the subject. To the extent that state regulations conflict with federal regulations promulgated under the Social Security Act, they yield to the federal regulations. *AGI–Bloomfield Convalescent Center, Inc. v. Toan*, 679 S.W.2d 294, 302 (Mo.App.1984).

■ It is self-evident not only from the proofs but also from the very premise of the level of care structure that a skilled nursing facility serves a more debilitated clientele than does an ICF. The findings of the Commission acknowledge that reality. *See also Monroe County Nursing Home Dist. v. Missouri Dep't of Social Servs.*, 778 S.W.2d 721, 723 (Mo.App.1989). The Commission acknowledges also that "the skill care residents' needs may be more costly." The Commission findings also implicitly agree that the state regulations, as do the federal regulations, "require that an operator meet the residents' needs." 13 CSR 15–14.042(71). That is to say, meeting the personal needs of the skilled care residents with nursing care appropriate to their condition is a prerequisite to certification of a facility for that higher level of care.

■ Thus, within the scheme of the regulations, a higher certification and the added costs of patient care that attend that higher level of certification are concomitants. They are not redundant, as the Commission has it, but inseparable. In *Sells Rest Home, Inc. v. Department of Social Servs.*, 829 S.W.2d 59 (Mo.App. 1992), we responded to that same ground of refusal to consider the increased cost of LPN personnel that attends the increased nursing needs of the residents of a skilled facility. We rejected, as an erroneous conclusion of law, a reading of the regulations that would introduce a dichotomy between the change in patient needs of skilled care residents ["case mix"] and the change from the intermediate to the skilled level of care as a basis for reimbursement of costs under CSR 70–10.010(7)(D). *Id.* at 63 (slip opinion). That is also our independent determination of law under this record. The rejection of the request for reimbursement for the cost of two additional LPNs, therefore, rests on an erroneous conclusion of law. *Jackson County v. State Bd. of Mediation*, 690 S.W.2d 400, 403[5] (Mo. banc 1985).

**1.** We note that the federal and state regulations under which the decision of the Administrative Hearing Commission was adjudicated are no longer in effect. They were superseded by recent revisions of Medicaid regulations, both federal and state. *See Sells Rest Home, Inc. v. Department of Social Services*, 829 S.W.2d 59 (Mo.App.1992).

Sunset contends that the cost of 4.2 LPNs allowed by the Commission decision still leaves the facility two short of the staffing required to meet the needs of its skilled care residents under the regulatory standards. Those standards require the facility to provide "24–hour nursing services which are sufficient to meet total nursing needs" [42 CFR 405.1124(c)] and to give each resident "twenty-four (24) hour protective oversight and supervision, personal attention and nursing care in accordance with his/her condition" [13 CSR 15.-14.042(71)]. The Sunset facility is laid out as two wings extending from a central building with a nursing station in each wing, 184 feet apart. There are skilled residents in each wing, and because of the configuration of the structure, one LPN cannot cover the entire building. There was expert testimony by Sunset that, due to the tube feedings and other such care that requires close and frequent licensed nurse attention, and given the distance between the two nurses stations, a licensed nurse was needed in each station, 24 hours per day. The 4.2 LPNs, determined by the Commission as the minimum number required by the regulations to certify the Sunset facility as a skilled nursing facility, were equivalent to one LPN on the morning shift, one on the evening shift, and one on the night shift, seven days per week. Sunset argues that, since one LPN cannot effectively attend to the needs of the patients in both wings, one nursing station would go unattended. That was the basis for the reimbursement for two additional LPNs requested by Sunset.

■ The denial of the request for two additional LPNs rested on two grounds. The first, that such a request is properly a claim for rate adjustment for change in case mix and so not directly related to the change in level of care, we have already discounted as premised on an erroneous conclusion of law. The second express basis for the denial was that the cost for which Sunset sought reimbursement was the consequence of the "inefficiently designed facility," a burden that "the Department is under no obligation to shoulder." There was no evidence of design inefficiency so that the determination of that ground by the Commission, if meant as a finding of fact, finds no probative support. If meant as a conclusion of law, that determination is erroneous for the reason given in *Sells*, at 62 *et seq:* "[T]he Medicaid reimbursement rates are determined by looking at allowable costs 'related to ordinary and necessary care *for the level of care provided* for an efficiently and economically operated facility' 13 CSR 70–10.010(7)(F) (emphasis added). Therefore, the Commission's misplaced adherence to an 'objective' standard of efficiency will not be upheld, as the regulations themselves imply that what is efficient is viewed from the perspective of the level of care provided." There was evidence, rather, that even with the grant of the request for reimbursement, the Sunset rate would still be $11.70 less than the average rate for nursing homes in Missouri.

■ There was substantial evidence to support the claim by Sunset that the cost of two additional LPNs is directly related to the change in certification to the higher skilled nursing facility level of care. There is no substantial evidence other than, if the two additional LPNs are an allowable cost, the reimbursement amounts to an additional $1.56 per diem. We have determined as a matter of law that the reimbursement claim was an allowable cost. Accordingly, we reverse and remand that component of the judgment of the circuit court with directions for further remand to the Commission with directions that the Commission grant Sunset an additional $1.56 per diem as Medicaid reimbursement for the LPN salaries.

## THE REGISTERED NURSE AS ASSISTANT DIRECTOR OF NURSING

■ Federal regulation 42 CFR 405.1124 requires that when the director of nursing has "other institutional duties" than responsibility for the "functions, activities, and training of the nursing services staff," then a qualified registered nurse must serve as assistant. That is to ensure that

"there is the equivalent of a full time director of nursing services on duty." Sunset produced a time study that showed that the director of nursing spent 52 percent of her time with the skilled nursing facility portion of her duties and 48 percent of her time on other duties. On that premise, Sunset sought reimbursement for a registered nurse functioning as an assistant director of nursing. The Commission determined that Sunset did not prove the extent of the director's "other institutional duties." Therefore, the need for an assistant director of nursing was not shown. The regulations require a full-time director. An assistant is required only so that the equivalent of a full-time director is always on duty. The extent of time spent by the director on "other institutional duties," therefore, is irrelevant since Medicaid reimburses for only one full-time director, "be it the director or the assistant who actually works the hours." *Sells*, at 62. Medicaid has already reimbursed Sunset for a full-time director. The claim for a registered nurse as an assistant director of nursing was properly denied.

The case is affirmed in part, reversed in part, and remanded with directions.

All concur.