CONCERNED SERVICES,
INC., Appellant,

v.

DEPARTMENT OF SOCIAL SERVICES
and Missouri Division of Medical
Services, Respondents.

No. WD 44976.

Missouri Court of Appeals,
Western District.

Aug. 11, 1992.

Harvey M. Tettlebaum, Jefferson City, for appellant.

Linda M. Shine, Jefferson City, for respondents.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

FENNER, Judge.

Appellant, Concerned Services, Inc., appeals from a decision of the trial court which affirmed a decision of the Administrative Hearing Commission denying Concerned Services' request for an increase in its Medicaid per-diem reimbursement rate.

Concerned Services operates a nine bed intermediate care facility for the mentally retarded (ICF/MR) located in Stanberry, Missouri. The facility is licensed under state law as an ICF/MR certified facility pursuant to § 198.045, RSMo 1986 and participates in the Medicaid program. Concerned Services entered the ICF/MR program in 1981 at which time it utilized a house parent staffing model. Under the house parent staffing model, Concerned Services utilized live-in house parents. Live-in relief house parents are a part of

the house parent staffing model and they were paid at a daily flat rate as opposed to an hourly rate.

In 1985, the base rate for Medicaid per diem reimbursement for Concerned Services and other ICF/MR facilities was reestablished by respondents Department of Social Services, and Missouri Division of Medical Services (Department of Social Services). This "rebasing" of the Medicaid per diem reimbursement rate was done from 1985 fiscal year end cost reports. Concerned Services' 1985 cost reports reflected its use of the house parent staffing model.

In November of 1988, Concerned Services requested a reconsideration of its reimbursement rate based upon extraordinary circumstances. Concerned Services complained that United States Department of Labor had changed its policy in regard to enforcement of the Federal Wage and Hour Law so that relief staff was required to be paid minimum wage for the hours worked which was a greater rate of pay than the daily flat rate that relief staff was paid when the reimbursement rate was rebased in 1985. Concerned Services claimed that this constituted an extraordinary circumstance which entitled it to a rate adjustment. The Administrative Hearing Commission denied Concerned Services' request for an increase in its reimbursement rate. On appeal to the Cole County Circuit Court, the decision of the Administrative Hearing Commission was affirmed.

■ In this appeal, Concerned Services argues that the Administrative Hearing Commission erred in finding that Concerned Services had not shown an extraordinary circumstance which entitled it to a rate adjustment.

■ It is the decision of the Administrative Hearing Commission that is reviewed by an appellate court and not the decision of the circuit court. *Monroe County Nursing Home District v. Missouri Department of Social Services*, 778 S.W.2d 721, 722 (Mo.App.1989). Concerned Services carried the burden of proof before the Administrative Hearing Commission. § 621.055.1, RSMo 1986. The scope of review of this court is to determine whether substantial evidence reasonably supports the commission's judgment. *Monroe County Nursing Home District*, 778 S.W.2d at 722. Substantial evidence being competent evidence that, if believed, would have probative force on the issues. *Id.* However, an appellate court will draw from the commission's findings its own conclusions of law. *Id.*

The Reimbursement Plan of the Department of Social Services permits a facility such as Concerned Services to seek rate reconsideration to increase its reimbursement rate for extraordinary circumstances pursuant to 13 C.S.R. 70 10.030(4)(A)2.D, which provides in pertinent part as follows:

(4) Prospective Reimbursement Rate Computation

\* \* \* \* \* \*

2. Adjustments to rates. The prospectively determined reimbursement rate may be adjusted only under the following conditions:

\* \* \* \* \* \*

D. When the provider can show that it incurred higher cost due to circumstances beyond its control and the circumstance is not experienced by the nursing home or ICF/MR industry in general, the request must have a substantial cost effect. These circumstances include, but are not limited to:

(I) Acts of nature such as fire, earthquakes and flood that are not covered by insurance;

(II) Vandalism and/or civil disorder; or

(III) Replacement of capital depreciable items not built into the existing rate that are the result of circumstances not related to normal wear and tear or upgrading of existing systems;

Thus to be granted a rate increase on the basis of extraordinary circumstances, the provider must prove that it 1) incurred higher cost, 2) due to circumstances beyond its control, and 3) the circumstance is not experienced by the nursing home or ICF/MR industry in general.

Concerned Services argues that because of the change in the enforcement policy of

the United States Department of Labor with respect to the Federal Wage and Hour Law, it has incurred higher staffing cost. Concerned Services argues that this change is a circumstance beyond its control that is not experienced by the nursing home or ICF/MR industry in general. The issue in dispute between the parties in this appeal is whether this change in the enforcement policy of the Federal Wage and Hour Law is a circumstance experienced by the industry in general.

Concerned Services argues that the evidence showed that other care providers within the industry were utilizing a shift staffing model rather than a house parent model and that these providers were not adversely effected. Under the shift staffing model employees worked and were paid for a regular shift rather than on a live-in basis. When the change in enforcement of the Wage and Hour Law as to house parent model relief staff took place, shift staffing model employees were not affected in that they were already required to be paid in accordance with the Wage and Hour Law.

A survey of all 40 of the ICF/MR facilities listed in the state in January of 1990 reflected that 10 other facilities, in addition to Concerned Services, used the house parent model for staffing and 27 facilities used the shift staffing model.[1] The survey reflected the staffing practice in place in November of 1988. However, there was no evidence as to staffing practice of other facilities in 1985 when the reimbursement rates for these facilities were rebased. The relevant time for measuring the cost impact upon the industry in general is 1985 because reimbursement rates are determined by adjustments to the base rate set at that time. Additionally, the survey results show that in 1988 almost 30%, or 11 of the 40 ICF/MR's were using the house parent staffing model. Therefore, this method of staffing was not peculiar to Concerned Services, at least in 1988.

The evidence did not show a circumstance experienced by Concerned Services that was not experienced by the industry in general. There was no evidence as to the number of facilities using the house parent model in 1985 when the base rates were set. Therefore, it could not be determined how many facilities had their base rate set on the basis of house parent model staffing as was the case with Concerned Services. Furthermore, the evidence that was presented in regard to facilities using the house parent staffing model in 1988 failed to support Concerned Services' contention that its' was an extraordinary circumstance not affecting the industry in general. Concerned Services failed to prove that it was entitled to an adjustment of its reimbursement rate based upon extraordinary circumstances.

Judgment affirmed.

All concur.

1. Eliminating Concerned Services from the 40 facilities left 39 facilities surveyed. Thirty seven of the 39 facilities surveyed responded.