**BRANSON R–IV SCHOOL DISTRICT,**
Plaintiff/Respondent/Cross–
Appellant

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION,**[1] Defendant/Appellant/Cross–Respondent

and

**Missouri State Labor Council, Missouri Building & Construction Trades Council and Laborers Local Union No. 676,** Intervenors/Appellants/Cross–Respondents.

Nos. 18984, 18997, 18999 and 19012.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 1, 1994.

1. Along with the Labor and Industrial Relations Commission (LIRC), the Department of Labor and Industrial Relations (Department) was named as a party in this action. However, according to § 286.010, RSMo 1986, the LIRC controls, manages, and supervises the Department. Moreover, the LIRC—not the Department—has the duty and power, jurisdiction and authority to sue and be sued. § 286.060.1(1). Therefore, we do not address the Department as a separate and distinct party in this opinion.

Thomas A. Mickes, James G. Thomeczek, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, for Branson R–IV School Dist.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cynthia A. Quetsch, Asst. Atty. Gen., Jefferson City, for Labor and Indus. Rel. Com'n.

Ronald C. Gladney, Brent J. Jaimes, Bartley, Goffstein, Bollato and Lange, Clayton, for Mo. State Labor Council and Mo. Building & Const. Trade Council.

Albert J. Yonke, Michael G. Newbold, Yonke, Arnold, Newbold & Regan, P.C., Kansas City, Douglas W. Greene, III, Springfield, for Laborers Local Union No. 676.

MONTGOMERY, Judge.

On May 17, 1994, this district filed an opinion affirming the judgment in part and reversing and remanding another part of the judgment. Thereafter, this district denied Plaintiff/Cross–Appellant's motion for rehearing or to transfer to the Supreme Court. Plaintiff/Cross–Appellant then filed an application for transfer with the Supreme Court, which was sustained on August 15, 1994. On November 22, 1994, the Supreme Court entered the following order: "Cause ordered retransferred to the Missouri Court of Appeals, Southern District." With the addition of this paragraph our original opinion is readopted. It is set out hereunder.

This cause involves four appeals from an order by the Taney County Circuit Court, which overturned in part and affirmed in part an earlier order by the Labor and Industrial Relations Commission (LIRC). Three of the appeals challenge the court's finding that the basis of the LIRC's prevailing wage rate determination for various construction trades in Taney County was an unpromulgated and, consequently, a void rule. The fourth challenges the court's decision to uphold the LIRC's order regarding certain wage rate stipulations.

The parties appealing the circuit court's decision concerning the method of establishing a prevailing wage rate are the LIRC; the Missouri State Labor Council and the Missouri Building & Construction Trades Council; and Laborers Local Union No. 676. Appealing the court's decision to enforce certain wage rate stipulations is the Branson R–IV School District (Branson).

The core issue is the same in each appeal. We therefore consider them together. That issue is whether the LIRC, in determining certain prevailing wages in Taney County, used a particular method or formula, which should have been promulgated as a rule in accordance with the rule-making procedures set out in the Missouri Administrative Procedure Act (APA).

*FACTS*

During the summer of 1992, the Branson Board of Education authorized the construction of two school facilities in Taney County. Under the Prevailing Wage Act, §§ 290.210–.340,[2] all workers employed by private contractors in the construction of such public facilities must be paid not less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed. § 290.230. In this case,

"locality" means the county where the physical work is to be done. § 290.210(3). Before Branson advertised for bids or undertook construction, it was required to ask the Department of Labor and Industrial Relations (Department) to determine the prevailing rate of wages for workers to be employed on its projects. § 290.250; *City of Kennett v. Labor and Indus. Relations Comm'n*, 610 S.W.2d 623, 625 (Mo. banc 1981). Pursuant to this requirement, the Division of Labor Standards (Division)[3] made preliminary wage rate determinations for relevant trades in Taney County.

Branson filed objections to these preliminary determinations, as did three local unions. On November 16, 1992, the LIRC held a hearing to consider these objections.[4] Present were Branson and two of the complaining unions. Also present were the Missouri State Labor Council and the Missouri State Building and Trades Council (Councils), both of which had intervened in the proceedings. At the hearing, Branson stipulated that, using the Division's method of analyzing wage rate evidence, the Division's preliminary prevailing wage determinations were correct for three trades: general laborers, hod carriers, and electricians. Branson made clear, however, that this stipulation was conditional. It reserved the right to challenge the method used to determine prevailing wages for these and the other trades to be employed on its projects. The LIRC subsequently issued its final order regarding prevailing wages based on evidence presented by the Division.

On December 30, 1992, Branson filed a petition with the Taney County Circuit Court for review of the LIRC order. Among other things, it argued that the method used by the Division, and sanctioned by the LIRC,[5] to

---

**2.** This and subsequent statutory references are to RSMo 1986.

**3.** The Division is that branch of the Department of Labor and Industrial Relations that surveys wages being paid for construction work in localities throughout Missouri and issues preliminary determinations for minimum wage rates that must be paid on public works projects in these localities. 8 CSR 30–1.010.

**4.** When an objection is raised to a preliminary determination, the LIRC conducts an evidentiary hearing and issues a final determination as it believes the evidence warrants. 8 CSR 20–5.010.

**5.** During the hearing on November 16, 1992, the LIRC chairperson indicated that the method the Division used to make preliminary wage rate determinations was the "methodology" adopted by the LIRC in making its final determinations.

determine prevailing wages constituted a rule under § 536.010(4). As such, Branson argued, the "rule" was subject to the requirements of the APA, §§ 536.010–.200. Because the method had not been promulgated in accordance with the requirements of § 536.021, Branson contended that it should be declared a void rule and that the LIRC's final wage determinations, which were based on the method, should be pronounced arbitrary, capricious, and an abuse of discretion.

The method the Division used in making its preliminary wage determinations is the mode method of statistical analysis. Under this approach, the prevailing wage rate for a given trade is the actual wage most frequently paid in a locality. For example, suppose that during the past year hod carriers in Taney County received four different hourly rates of pay: $10, $11, $12, and $15. Suppose also that, of all the hours hod carriers reportedly worked during the year, 20 percent of the hours were at the $10 rate, 15 percent were at the $11 rate, 35 percent were at $12, and 30 percent were at $15. The prevailing wage—the actual wage most frequently paid—would therefore be $12 per hour.

On July 12, 1993, the Taney County Circuit. Court found that the mode method was a rule, subject to the APA's rule-making requirements. Finding further that the method had been adopted in violation of the APA, the court declared it to be a void rule. However, because Branson had stipulated to three prevailing wage rates (for general laborers, hod carriers, and electricians), the court upheld the LIRC's determination regarding those wages. On appeal, Branson challenges the court's decision to enforce these stipulated rates, but urges us to uphold the court's ruling regarding the mode method. The other parties challenge the court's ruling on the method, but argue in favor of enforcing the stipulations. Consequently, we need not rule on Branson's appeal if the trial court incorrectly declared that the method of determining prevailing wage rates constituted a void rule.

■ Although this cause is appealed from the circuit court, we review the findings and decisions of the agency, not the judg-

ment of the circuit court. *City of Cabool v. Missouri State Bd. of Mediation,* 689 S.W.2d 51, 53 (Mo. banc 1985). We review the agency's decision to determine whether it is supported by substantial and competent evidence, constitutes an abuse of discretion, is unauthorized by law, or is arbitrary, capricious or unreasonable. *St. Joe Minerals v. State Tax Comm'n,* 854 S.W.2d 526, 529 (Mo. App.1993); *see* § 536.140.2. When reviewing factual findings by the agency, we determine whether they are supported by substantial evidence upon the record as a whole. *Hewitt Well Drilling & Pump. Serv. Inc. v. Director of Revenue,* 847 S.W.2d 795, 797 (Mo. banc 1993). When reviewing questions of law, we exercise unrestricted, independent judgment and must correct erroneous interpretations of law. *Burlington Northern R.R. v. Director of Revenue,* 785 S.W.2d 272, 273 (Mo. banc 1990).

## PREVAILING WAGE RATE DETERMINATIONS

■ The central question in this cause is whether the LIRC, in determining prevailing wage rates for trades in Taney County, improperly based its decision on a method or formula that should have been promulgated as a rule pursuant to the APA rule-making requirements. We conclude that the LIRC's determination was not based on a rule. Therefore, no rule-making procedures were required, and the LIRC's determination should be affirmed.

■ Section 536.010(4) defines a rule as "each agency statement of general applicability that implements, interprets, or prescribes law or policy." In other words, a rule is "[a]n agency statement of policy or interpretation of law of future effect which acts on unnamed and unspecified persons or facts." *Missourians for Separation of Church and State v. Robertson,* 592 S.W.2d 825, 841 (Mo. App.1979). In contrast to a rule, an adjudication is "[a]n agency decision which acts on a specific set of accrued facts and concludes only them." *Id.* An adjudication results from a "contested case," which the APA defines as "a proceeding before an agency in which legal rights, duties or privileges of

specific parties are required by law to be determined after hearing." § 536.010(2).

The instant case involves an adjudication by the LIRC. The only "rules" implicated in that adjudication are the statutory rules (i.e., the laws) by which the legislature defined the term "prevailing hourly rate of wages" and directed how prevailing wage rates should be determined.[6]

Quoting more fully from § 536.010(4), a "rule" means:

each agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of an existing rule, but does not include:

(a) A statement concerning only the internal management of an agency and which does not substantially affect the legal rights of, or procedures available to, the public or any segment thereof;

(b) A declaratory ruling issued pursuant to section 536.050, or an interpretation issued by an agency with respect to a specific set of facts and intended to apply only to that specific set of facts;

. . . .

(d) A determination, decision, or order in a contested case;

. . . .

■ This statutory definition provides helpful guidance as we consider several important issues in this case. For instance, in its petition to the circuit court and its reply brief to this Court, Branson focused considerable attention on the Division of Labor Standards' use of the mode method to make its preliminary wage rate determination. The circuit court did likewise. However, the proper focus for review in this case is the LIRC's final wage determination, not the Division's preliminary determination. *City of Kennett v. Labor and Indus. Relations*

*Comm'n*, 610 S.W.2d 623, 627 (Mo. banc 1981). The LIRC's final determination resulted from an evidentiary hearing, held pursuant to § 290.260.6 and 8 CSR 20–5.010. During that hearing, Branson was able to challenge the Division's evidence and introduce its own evidence regarding prevailing wage rates. Consequently, the method by which the Division reached its preliminary determination did not "substantially affect the legal rights of, or procedures available to, the public or any segment thereof." § 536.010(4)(a).

Only the LIRC's final wage rate determination substantially affected Branson's legal rights. But, as a "determination, decision, or order in a contested case," this too falls within a statutory exception. *See* § 536.010(4)(d). The LIRC's final determination resulted from a contested hearing, not from the application of a rule.

Similarly, to the extent that the LIRC's final determination represents an interpretation of relevant statutes regarding prevailing wage rates, that interpretation was issued "with respect to a specific set of facts and [was] intended to apply only to that specific set of facts." § 536.010(4)(b). It is not an "agency statement of general applicability." The language in 8 CSR 30–3.010(3) makes this clear:

A separate request [for a wage determination] must be filed for each separate project by the public body. . . . One public body cannot use the wage determinations made by [the Department of Labor and Industrial Relations] for another public body even though both public bodies are located in the same county. Special wage determinations issued by the department only apply to the public body and its project described in the special wage determination.

A wage determination is limited to specific facts and has no general applicability. Thus,

---

**6.** Section 290.250 requires the Department to determine prevailing rates of wages to be paid on public works projects throughout Missouri. The statutory definition of prevailing hourly rate of wages is "the wages paid generally, in the locality in which the public works is being performed, to workmen engaged in work of a similar charac-

ter." § 290.210(5). In determining prevailing wage rates, the Department must "ascertain and consider the applicable wage rates established by collective bargaining agreements, if any, and the rates that are paid generally within the locality." § 290.260.1.

§ 536.010(4)(b) precludes classifying the LIRC's interpretation of "prevailing wage rates" (or other relevant terms) as a rule.

As already mentioned, the only "rules" implicated in the LIRC's final determination in this case are the statutes that define "prevailing wage rates" and direct how those wage rates shall be determined. We point this out because Branson's reply brief includes citations to a series of cases in which appellate courts have held that agencies may not enforce *unpromulgated* rules, regulations or policies in the course of adjudications. In each of these cases, however, the respective agency had attempted to decide a contested case on the basis of something other than a clear statutory directive or promulgated rule. In the instant case, the LIRC simply applied relevant statutes, the meaning of which is plain and clear.

The first case Branson cites is *NME Hospitals Inc. v. Dep't of Social Serv.*, 850 S.W.2d 71 (Mo. banc 1993), in which the Missouri Supreme Court held that a decision by the Department of Social Services was based on an unpromulgated (and thus a void) rule. *Id.* at 74. The basis for the department's decision was a policy change, stated as an amendment to the agency's Medicaid manual. As the Supreme Court pointed out, a change in statewide policy is a rule, and failure to follow rule-making procedures renders such a purported change void.[7] *Id.* The instant case involves neither a policy nor a policy change. It involves the application of clear statutory directives.

This same difference distinguishes the instant case from *St. Louis Christian Home v. Missouri Comm'n on Human Rights*, 634 S.W.2d 508 (Mo.App.1982). There, the appeals court held invalid a Human Rights Commission regulation (intended to define certain statutory terms) because the regulation had not been properly promulgated. *Id.* at 513–15. Similarly, in *Sunset Retirement*

*Homes, Inc. v. Dep't of Social Serv.*, 830 S.W.2d 18 (Mo.App.1992), the court noted that the Administrative Hearing Commission could not premise an adjudicative decision on a policy that an agency had never formally adopted as a regulation. *Id.* at 21. Significantly, the unpromulgated policy at issue in *Sunset* was one that the agency had earlier proposed as a regulation but had later decided not to promulgate. *Id.* at 21.

Along the same lines, *Missouri State Div. of Family Serv. v. Barclay*, 705 S.W.2d 518 (Mo.App.1985), involved a Division of Family Services (DFS) determination that was based on an unpromulgated agency policy. That policy took the form of a method for computing the income of benefit recipients. Finding that the method constituted a rule under § 536.010.4, the court declared it void because it had not been properly promulgated. *Id.* at 520–21. Branson's argument notwithstanding, *Barclay* provides no guidance in the instant case. *Barclay* involved a method based on an unpromulgated policy. Here, the only method involved is based on clear statutory directives.[8]

*Tonnar v. Missouri State Highway and Transp. Comm'n*, 640 S.W.2d 527 (Mo.App. 1982), is comparable to *Barclay*. In *Tonnar*, the Highway and Transportation Commission based an adjudicative decision on its Right-of-Way Manual, a publication that "declare[d] the *policy* of the Commission in respect to certain compensation and relocation payments and ... set practices and procedures governing rights of the public in these areas." *Id.* at 531 (emphasis added). Finding (1) that the provisions of this manual fell within the § 536.010 definition of a rule and (2) that the provisions had never been promulgated in accordance with § 536.021, the court held that they had no binding effect. *Id.*

---

7. The Supreme Court's holding was also based in part on § 208.153.1, which explicitly requires that the definition of the reasonable costs, manner, extent, quantity, quality, charges and fees of medical assistance under the Medicaid program must be made by rule and regulation. 850 S.W.2d at 74.

8. The "mode method," upon which the Division bases its preliminary wage rate determinations, does not correspond to the method in *Barclay*. The mode method is merely a means of organizing and presenting evidence accumulated through investigations and field surveys and is firmly grounded on a reasonable reading of what the prevailing wage statutes require.

*State v. Peters,* 729 S.W.2d 243 (Mo.App. 1987), another case Branson cites, involved provisions of Missouri's "implied consent" statute, § 577.020–.041, which pertains to driving while intoxicated or drugged. These provisions (§§ 577.020.3 and 577.026.1) require that any chemical tests of a driver's breath, blood, saliva, or urine "shall be performed according to methods and devices approved by the state division of health." Section 577.026.2 mandates that "[t]he state division of health shall approve satisfactory techniques, devices, equipment, or methods to conduct [the above mentioned] tests."

This Court found that the Division of Health had never promulgated rules regarding approved methods and devices, et cetera. As a result, we held that evidence derived from testing methods that had not been approved by promulgated rule could not form the basis of a prosecution for driving while intoxicated. *Id.* at 245–46. This holding has no bearing on the instant case. The Division of Health is required by law to promulgate rules aimed at clarifying provisions of the implied consent statute. That statute cannot be applied unless the Division of Health specifies the testing methods and devices it approves. The prevailing wage statutes, by contrast, are clear and precise as written and can readily be applied without further definition or clarification.

Finally, Branson cites *State ex rel. Beaufort Transfer Co. v. Pub. Serv. Comm'n,* 610 S.W.2d 96, 100 (Mo.App.1980). In *Beaufort,* the Public Service Commission (PSC) sought to define the term "contiguous trade territory." That term had been used for years in PSC orders establishing the routes of common carriers but had never been defined by statute or by promulgated rule. It had only been defined by custom and usage. Prior to the adjudication at issue in *Beaufort,* PSC staff members had recommended that the phrase "contiguous trade territory" be redefined according to a standard formula.

The court of appeals concluded that this formula "amounted to a statement of general applicability and, hence, a rule within the definition of § 536.010, RSMo 1978," and that the PSC's adjudicatory order (which was based on the formula) "was invalid because required rule making procedures had not been observed." *Id.* at 100. Once more, we point out that the formula at issue in *Beaufort* had no explicit statutory basis. The "formula" at issue in the instant case, however, is set forth by statute.

We find no justification for the circuit court's conclusion that the LIRC based its final wage rate determination on an unpromulgated rule. Therefore, since Branson does not challenge the sufficiency of the evidence underlying the LIRC's final determination, the only pertinent question remaining is whether the LIRC's final determination was authorized by the relevant statutes.

■ The Department of Labor and Industrial Relations is required by law to determine prevailing hourly rates of wages to be paid on public works projects throughout Missouri. § 290.250. The statutory definition of prevailing hourly rate of wages is "the wages paid generally, in the locality in which the public works is being performed, to workmen engaged in work of a similar character." § 290.210(5). In making its determinations, the Department must "ascertain and consider the applicable wage rates established by collective bargaining agreements, if any, and the rates that are paid generally within the locality." § 290.260.1. The LIRC, which adjudicates contested cases involving prevailing wage rates, interprets the term "prevailing wage rate" to mean the most prevalent or most common wage actually paid in a locality. Such a definition is clearly justified.

■ The primary rule of statutory construction is to determine the intent of the General Assembly from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning. *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). Where a statute's language is clear and unambiguous, however, there is no room for construction. *Id.* In determining whether the language is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence. *Id.*

In Webster's Third New International Dictionary (1966), the word "prevailing" is defined as "having superior force or influence," "most frequent," "generally current" or "common." The LIRC's understanding of prevailing wage rate as the most frequent or common wage rate paid in a locality is obviously in line with this definition.

This conclusion is not changed by the statutory definition of prevailing wages as "the wages paid *generally,* in the locality in which the public works is being performed, to workmen engaged in work of a similar character." § 290.210(5) (emphasis added). Nor is it changed by the requirement that, when determining prevailing wage rates, the Department must "ascertain and consider the applicable wage rates established by collective bargaining agreements, if any, and the rates that are paid *generally* within the locality." § 290.260.1 (emphasis added).

Again referring to Webster's Third New International Dictionary, we find that "generally" is defined as "in a general manner," "as a whole," "in a reasonably inclusive manner," or "on the whole." Given the manner in which the word "generally" is used in the two cited provisions, the plain and clear meaning is that, when determining prevailing wages, the Department must consider the actual wages being paid on the whole throughout an entire locality. In other words, the statutes mandate the scope of the Department's investigation and the evidence to be gathered and presented to the LIRC in a contested hearing.

Furthermore, the LIRC is justified in insisting that a prevailing wage rate must, if possible, be based on a wage actually paid within a locality. As already mentioned, in making its determinations the Department must "ascertain and consider the applicable wage rates established by collective bargain-

ing agreements, if any, and the *rates that are paid* generally within the locality." § 290.260.1 (emphasis added). Without question, the phrase "rates that are paid" means the rates that are "actually" paid and not some average wage rate or other derivative figure. Identifying a prevailing wage rate (i.e., the most common or prevalent) from among wages actually paid in a locality leads inexorably to a prevailing wage rate that matches one of these wages actually being paid.[9]

In summary, we hold that the LIRC's final prevailing wage rate determination was not itself a rule and was not based on a rule, as defined in § 536.010. Rather, that determination was based on a valid interpretation and application of relevant statutes. As a result, we reverse the circuit court's judgment on this point and remand with direction to enter a judgment affirming the LIRC's final order.

In light of this holding, we need not consider in detail Branson's appeal from the circuit court's decision to enforce Branson's stipulation regarding prevailing wage rates for general laborers, hod carriers, and electricians. The success of that appeal would require us to find that the LIRC based its determination on an invalid rule—something we have declined to do. The stipulations should therefore be enforced. In addition, we decline to address the Councils' argument that the circuit court lacked jurisdiction to consider Branson's request for a declaratory judgment regarding the validity of the mode method. Not only does the foregoing discussion and holding render such an exercise pointless, but we also note that in its order of July 12, 1993, the circuit court determined that Branson's request for declaratory judgment was moot.[10]

9. Apparently, the only time the LIRC bases its prevailing wage rate determinations on something other than a wage rate actually paid is when no evidence of actual wage rates is presented. In those situations, the LIRC bases its determination on the collective bargaining agreement in the locality. This approach is warranted by § 290.260.1.

10. Branson presented two claims in its circuit court petition. In Count I (in which Branson merely requested the court to vacate the LIRC's order), jurisdiction was invoked pursuant to §§ 290.260 and 536.110. In Count II (in which Branson sought a much broader declaratory judgment regarding the mode method), jurisdiction was invoked pursuant to § 536.050. The court based its subsequent order on the issues raised and the relief sought in Count I.

We also need not rule on the point asserted by the Laborers Local Union No. 676, that the circuit court lacked jurisdiction to order the escrow of certain monies. In response to Branson's request to be allowed to begin its construction projects before this prevailing wage dispute was finally resolved, the circuit court issued an order on May 21, 1992, allowing Branson to deposit in escrow certain monies earmarked for wages. The amount being escrowed is equal to the hours being worked on the projects multiplied by the difference between the LIRC's prevailing wage determinations and any lesser wage rates paid. In other words, for any contractor or subcontractor who is paying employees less than the hourly wage rates determined by the LIRC, the difference between the LIRC rate and the rate actually paid is being set aside in escrow pending resolution of this controversy. As a result of our affirming the LIRC's wage rate determinations, Branson must now ensure that the funds held in escrow are disbursed in proper fashion to any workers who have not been paid at prevailing wage rates.

To reiterate, the circuit court's order of July 12, 1993, is reversed with respect to the mode method of determining prevailing wage rates, and the cause is remanded with direction to enter judgment (1) affirming the LIRC's decision and (2) ordering Branson to disburse the escrowed funds in accordance with this decision.

PARRISH, C.J., and SHRUM, J., concur.