**MASON CONTRACTORS ASSOCIATION, Plaintiff–Appellant,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION, et al., Respondents.**

No. 75056.

Missouri Court of Appeals,
Eastern District,
Division One.

July 27, 1999.

James N. Foster, St. Louis, for appellant.

Ronald C. Gladney, Clayton, Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, for respondents.

CLIFFORD H. AHRENS, Judge.

Mason Contractors Association ("Mason") appeals from a judgment of the Circuit Court of St. Louis County affirming the Labor and Industrial Relations Commission's ("Commission") decision to overrule Mason's objection to Annual Wage Order No. 4. Operating Engineers Local No. 513 ("O.E.") intervened in the proceedings below in support of the wage order. Mason argues the Commission erred in finding that the operation of masonry forklifts was a task best suited for operating engineers, not laborers. We affirm.

On March 7, 1997, the Missouri Division of Labor Standards promulgated Annual Wage Order No. 4.[1] On March 27, 1997, Mason filed an objection contesting this order on the grounds that the occupational title definitions of semi-skilled laborer and operating engineer were incorrect. This objection was filed pursuant to 8 C.S.R. 30–3.060(6) (1995),[2] which reads (in part):

Through an objection to a wage order, an interested party may assert that any given description of work, as stated within this rule, does not apply to a specific occupational title(s) and that a different work description should apply to that occupational title(s). The interested party shall have the burden of proving by a preponderance of the evidence the inapplicability of the description of work within that particular occupational title, but shall be afforded the opportunity to do so in a hearing on an objection to the wage order before the Labor and Industrial Relations Commission.

8 C.S.R. 30–3.060 provides guidelines for determining which jobs belong in which categories. The occupational title of laborer "consists of providing manual labor." 8 C.S.R. 30–3.060(8)(K). For example, a "first semiskill laborer" may handle certain materials "using a forklift (walk behind or similar types)," but not a masonry forklift. 8 C.S.R. 30–3.060(8)(K)(1)(B). In contrast, operating engineers "operate, monitor and control, repair, modify, assemble, erect, oil, [and] service each or all electrically, ... electronically, hydraulically or ... power-operated equipment." 8 C.S.R. 3.060(8)(O) For example, a "group III–A operating engineer" is a worker who may "operate, monitor and control, repair, modify, assemble, erect, oil, [and] service each or all electrically, ... electronically, hydraulically or ... power-operated equipment set forth as a masonry forklift." 8 C.S.R. 3.060(8)(O)(1)(D).

Mason argues that the rule should have provided that laborers, not operating engineers, should operate masonry forklifts and therefore be paid laborers' wages. O.E. intervened, asserting that the rule was valid and those operating masonry forklifts should be paid operating engineers' wages. On May 21, 1997, a hearing

---

1. The Commission is required to determine and enforce the prevailing hourly rate of wages in each locality for work of a similar character for all workmen employed by or on behalf of any public body engaged in the construction of public works, exclusive of maintenance work. Sections 290.220, 290.240, 290.250 RSMo 1994. The Commission has delegated this duty to its Division of Labor Standards. 8 C.S.R. 30–1.010 (1995).

2. Unless otherwise specified, all subsequent references to Missouri's Code of State Regulations refer to the 1995 supplement.

was conducted before the Commission. Mason, O.E. and the Division of Labor Standards presented evidence. On June 11, 1997, the Commission issued an order overruling Mason's objection and finding that Mason had not met its burden of proof. On July 10, 1997, Mason filed an appeal with the circuit court. The court entered judgment on August 19, 1998, affirming the Commission's initial determination. Mason appeals.

We review the findings and decisions of the Commission, not the judgment of the circuit court. *Branson R–IV School Dist. v. Labor and Indus. Relations Comm'n,* 888 S.W.2d 717, 720 (Mo.App. 1994). We review the Commission's decision to determine whether it is supported by substantial and competent evidence, constitutes an abuse of discretion, is unauthorized by law, or is arbitrary, capricious or unreasonable. *Id.*

On appeal, O.E. argues that the Commission's decision should be reversed because Mason is attempting to challenge the validity of 8 C.S.R. 30–3.060 without going through the required procedures for contesting an administrative rule. This validly promulgated rule explicitly allows interested parties to object to job title descriptions in the rule by using the procedure Mason used in this case. *See* 8 C.S.R. 30–3.060, *supra.* Point denied.

O.E. also argues that this appeal should be dismissed as moot because Mason is objecting to Annual Wage Order No. 4, which expired June 8, 1998. Mason is not challenging the wage determinations in the wage order. It is instead challenging the occupational titles as they appear in the rule. Furthermore, the Commission's decision with respect to the disputed job classifications has the effect of finally resolving the issue for purposes of res judicata and collateral estoppel. As such, the issues Mason addresses are still ripe for review and this appeal is not moot. *See Central Missouri Plumbing Co. v. Plumbers Local Union 35,* 908 S.W.2d 366, 371 (Mo.App.1995) (objection to the method of determining wages in an Annual Wage Order which had expired before the appeal was heard is not moot because "the issue is capable of repetition, and yet likely to evade review...."). Point denied.

In its first point on appeal, Mason argues that the Commission erred in overruling the objection to the order because its decision was not supported by substantial and competent evidence and is contrary to the overwhelming weight of the evidence. It asserts that there was insufficient evidence for the Commission to find that the operation of a masonry forklift is "work of a similar character" to work performed by other operating engineers.

Missouri's statutes define "prevailing hourly rate of wages" as "the wages paid generally, in the locality in which the public works is being performed, to workmen engaged in work of a similar character..." Section 290.210(5) RSMo 1994. "Locality" is defined as "the county where the physical work upon public works is being performed." Section 290.210(3) RSMo 1994. "Work of a similar character" is not defined in the prevailing wage law. *State v. Lee Mechanical Contractors, Inc.,* 938 S.W.2d 269, 271–72 (Mo. banc 1997). However, Missouri courts have held that "'similar' does not mean the same or identical." *City of Kennett v. Labor and Indus. Relations Comm'n,* 610 S.W.2d 623, 626 (Mo. banc 1981). Rather, work is considered "of a similar character" depending on the nature or type of the public works project being performed and the character of the work actually done. *Associated General Contractors v. Department of Labor and Indus. Relations,* 898 S.W.2d 587, 591–92 (Mo.App.1995).

During the hearing Mason presented evidence that masonry forklifts are commonly operated by laborers. William Klaric, a mason contractor, testified that in his experience, laborers nearly always operated masonry forklifts, not operating engineers. James Boeckman of the Division of Labor Standards testified that a masonry forklift is an "essential piece of equipment" to the

performance of a masonry laborer. Mason also noted that the Commission had already found that laborers were qualified to use forklifts, albeit only "walk behind forklifts" (or similar types).

O.E. and the Division of Labor Standards presented evidence that operating a masonry forklift is similar to the type of work generally done by operating engineers. Colleen Baker, director of the Division of Labor Standards, testified that in determining how to classify masonry forklift operation the Division looked "at the work of a similar character, of the nature or type of the work performed, [and] the scope of the work." During the hearing before the Commission, Klaric testified that technologically, there was no real difference between masonry forklifts and any other type of construction forklift (which are generally operated by operating engineers). John Smith, a masonry contractor, testified that whether or not a forklift was considered a "masonry forklift" depended not on the technology of the forklift itself, but rather the type of work it was being used for. Ted Alberici of J.S. Alberici Construction Company testified that masonry forklifts are unlike walk-behind forklifts in that they are self-propelled and have seats.

The Commission found, after weighing the evidence, that the "greater weight of evidence established that proper operation of a masonry forklift requires the skill, training and maintenance knowledge of an operating engineer." While Mason offered evidence suggesting that laborers frequently operate mason forklifts in the construction business, there was also evidence before the Commission that the task of operating the forklift is of a similar character to other tasks performed by operating engineers. It accordingly overruled Mason's objection. We find that the Commission's findings are supported by competent and substantial evidence, and not arbitrary, capricious or unreasonable. Point denied.

In its second point on appeal, Mason argues that the Commission erred in not considering all relevant factors when making its determination that operating engineers were suited to the task of operating masonry forklifts. We find nothing in the record to indicate that the Commission failed to consider all relevant factors or that the Commission ignored its regulatory mandate. Point denied.

The judgment of the trial court is affirmed.

JAMES A. PUDLOWSKI, P.J., and ROBERT E. CRIST, Senior Judge, concur.