Donald BRUEMMER, in his capacity by doctrine of virtual representation as representative of the members of International Brotherhood of Electrical Workers Local No. 257, Respondent,

v.

MISSOURI DEPARTMENT OF LABOR RELATIONS, Labor and Industrial Relations Commission, and Missouri Department of Labor and Industrial Relations, Missouri Division of Labor Standards, Defendants,

and

Midwest Telecommunications Association, Appellant.

No. WD 55907.

Missouri Court of Appeals, Western District.

Aug. 3, 1999.

Michael E. Kaemmerer, Chesterfield, for Appellant.

Ronald C. Gladney, Clayton, for Respondent.

Before SPINDEN P.J., EDWIN H. SMITH and RIEDERER, JJ.

ALBERT A. RIEDERER, Judge.

Midwest Telecommunications Association ("MTA"), Appellant, appeals from a judgment issued by the Circuit Court of Cole County remanding an order of the Labor and Industrial Relations Commission ("Commission") which had sustained an objection to the occupational title of work description of Communication (Electronic/Telecommunication) Technician and amended such description. Because we find the Commission did not issue a final determination of the prevailing wages for the occupational title being amended, we remand the decision.

### Factual and Procedural History

The Department of Labor and Industrial Relations, pursuant to Section 290.262.1,[1] "shall annually investigate and determine the prevailing hourly rate of wages in each locality for each separate occupational title." That sub-section further provides that a final determination applicable to every locality is to be contained in an "annual wage order." That final determination "shall be made annually on or be-

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

fore July 1 of each year and shall remain in effect until superseded by a new annual wage order or as otherwise provided in this section." *Id.* The purpose of this statutory duty of the Department is to enforce the declared policy of the state of Missouri "that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed shall be paid to all workmen employed by or on behalf of any public body engaged in public works . . . ." Section 290.220. Pursuant to this duty, the Department, through its Division of Labor Standards, issued Annual Wage Order No. 4, to include wage rates and occupational titles throughout the State of Missouri, in March of 1997.

8 CSR 30–3.060 Occupational Titles of Work Descriptions implements Section 290.262. It sets forth how occupational titles and work descriptions are determined, what the current occupational titles and work descriptions are, and how the titles and work descriptions are changed. Subsection (6) describes how an interested party can propose changes to the descriptions of work:

> The occupational titles and work descriptions for each type or class of work contained herein are valid throughout the entire state of Missouri. Through an objection to a wage order, an interested party may assert that any given description of work, as stated within this rule, does not apply to a specific occupational title(s) and that a different work description should apply to that occupational title(s). The interested party shall have the burden of proving by a preponderance of the evidence the inapplicability of the description of work within that particular occupational title, but shall be afforded the opportunity to do so in a hearing on an objection to the wage order before the Labor and Industrial Relations Commission.

8 CSR 30–3.060 also sets forth the current occupational titles of work descriptions.

Pursuant to this statutory and regulatory framework, on April 7, 1997, MTA filed a formal objection to Annual Wage Order No. 4, proposing a new occupational title of work description for Communication (Electronic/Telecommunication) Technician. On April 15, 1997, the Commission, pursuant to 8 CSR 30–3.060(6), issued a Prevailing Wage Hearing Notice. The International Brotherhood of Electrical Workers Local 1 and 257 ("IBEW") filed a request with the Commission to intervene, which was granted. The Commission held a hearing on May 29, 1997, and on June 18, 1997, issued an order sustaining the objection of MTA and amending the occupational title of work description for Communication (Electronic/Telecommunication) Technician. The Commission stated in pertinent part:

> While we sustain the Objection to the occupational title of work description of Communication (Electronic/Telecommunication) Technician, we add that the work within the expanded definition must only involve "low voltage" work. At that point where the communications technician's work interfaces with "high voltage," the work becomes exclusively that of an electrician.

> The evidence before us is insufficient to objectively determine the specific numeric value which separates "low voltage" and "high voltage." . . . We strongly encourage the Division of Labor Standards to establish by administrative rule the demarcation between high and low voltage.

> We recognize the concern of the Division of Labor Standards' that the language proposed by the Objector will create an overlap in occupational title of work descriptions between electricians and communication technicians. We disagree that either the perceived problems of enforcement or alleged public confusion are reasons to overrule the objection . . . .

> We do not agree that some overlap in the occupational titles of work descriptions are contrary to the purpose of 8

CSR 30–3.060 or will create an insurmountable enforcement problem for the Division.... If the work in question is appropriately performed by either of two crafts or occupational titles, the resolution should be that either rate is appropriate. If both communication technicians and electricians perform similar work, the work description should apply to both. We would be exceeding our authority if we refused to allow for an overlap in occupational titles of work description in a situation where an overlap is legitimately present.

On July 10, 1997, IBEW filed a request with the Commission for a stay of the order, stating that suspension of the decision would allow it an opportunity to submit hours under the expanded occupational title of Communication Technician which may have been previously submitted as electrician hours. On July 17, 1997, the Commission denied the request for a stay.

On July 17, 1997, IBEW filed a petition in the circuit court challenging the order issued by the Commission. On July 18, 1997, IBEW filed a motion for stay of administrative order. On July 29, 1997, MTA filed a motion for leave to intervene as a defendant, which was granted, and also filed an answer. On May 4, 1998, the circuit court issued findings of fact and conclusions of law, remanding the case to the Commission with instructions to issue further orders and have further proceedings as necessary to bring the Commission's order in compliance with the circuit court's judgment. The circuit court's Findings of Fact and Conclusions of Law provided that: (1) The Commission's order created an overlap between the occupational titles of Communication Technician and Electrician without "specifically defining the parameters of the overlap;" (2) The language in the order that encourages the "Division of Labor Standards to establish by administrative rule the demarcation be-

tween high and low voltage," is too vague and ambiguous to afford the parties to the contested case a determination of the rights, duties and privileges determined after hearing in the contested case; (3) The overlap created between the titles of Communication Technician and Electrician by the Commission's order, issued after the deadline for submission of hours, denied interested parties the right to submit hours to justify wage rates under Annual Wage Order No. 4 for the expanded Communication Technician definition; (4) The Commission's order only amends Annual Wage Order No. 4, and since no amendment to the Occupational Title Rule has been submitted to rule-making procedures under Sections 536.010 and 536.021, the Commission's order expires on the expiration of Annual Wage Order No. 4; (5) Hours may be submitted as both Electrician and Communication Technician hours, to the extent that the hours reflected are properly both hours worked as a Communication Technician and as an Electrician due to the overlap created by the Commission's order.

MTA appeals from the judgment of the circuit court.[2]

### Standard of Review

■■■ Appellate review of an administrative decision is limited to reviewing the decision of the agency, not the judgment of the trial court. *Missouri Dept. of Corrections v. Cheeney*, 926 S.W.2d 939, 941 (Mo. App.1996). Evidence is viewed in the light most favorable to the agency's decision. *Id.*The decision will be upheld unless it exceeds agency authority; it is not based upon substantial and competent evidence on the record as a whole; it is unreasonable, arbitrary or capricious; it involves an abuse of discretion; or it is otherwise unlawful. *Id.*When reviewing factual findings by the agency, we determine whether they are supported by substantial evidence

---

**2.** Under Rule 84.05(e), MTA was the Respondent, on appeal to this court, for briefing

purposes.

upon the record as a whole. *Branson R-IV School Dist. v. Labor and Industrial Relations Commission,* 888 S.W.2d 717, 720 (Mo.App.1994) However, where the decision of an administrative agency involves the interpretation or application of law, or the pertinent facts are undisputed between the parties, we independently review the matter as a question of law. *Missouri Ethics Commission v. Thomas,* 956 S.W.2d 456, 457 (Mo.App.1997). We give no deference to the agency's or the circuit court's conclusions of law, but exercise our own independent judgment. *Id.*

Appellant asserts three points of error with regard to the Commission's order: (1) It did not clearly state that it only amended the occupational title definition for the contested case parties who participated in the hearing and it did not state that it only applied to Annual Wage Order No. 4; (2) It did not afford interested persons the opportunity to submit wage data under its expanded definition of Communication Technician, which was contrary to the narrower definition in 8 CSR 30–3.060; and (3) The definitions of Communication Technician and Electrician overlap and are too vague to give parties notice of their duties.

### The Commission's Final Determination Pursuant to MTA's Objection is an Adjudication and not Rulemaking

■ 8 CSR 30–3.060 sets forth several "occupational titles of work" that describe various types of tasks done by workers performing public works projects in Missouri. It also sets forth the procedure by which an interested party may assert an objection to a wage order based upon a description of work. 8 CSR 30–3.060(6) at the time of the objection stated:

The occupational titles and work descriptions for each type or class of work contained herein are valid throughout the entire state of Missouri. Through an objection to a wage order, an interested party may assert that any given description of work, as stated within this

rule, does not apply to a specific occupational title(s) and that a different work description should apply to that occupational title(s). The interested party shall have the burden of proving by a preponderance of the evidence the inapplicability of the description of work within that particular occupational title, but shall be afforded the opportunity to do so in a hearing on an objection to the wage order before the Labor and Industrial Relations Commission.

IBEW argues that the Commission is "attempting to apply rule making effectiveness to a contested case proceeding." Specifically, it contends that the objection to Annual Wage Order No. 4 expired when that annual wage order expired. On the other hand, MTA maintains that the procedure in 8 CSR 30–3.060 is the proper way in which to bring about a new work description for an occupational title, and therefore, the expanded definition of Communications Technician contained in MTA's objection to Annual Wage Order No. 4 and sustained by the Commission's order, is permanently amended. If the Commission's action is an adjudication, then IBEW is correct. If the action is rulemaking, then MTA would prevail. Therefore, we must determine whether the Commission's action was an adjudication or rule making.

■ Section 536.010(4) defines a rule as "each agency statement of general applicability that implements, interprets, or prescribes law or policy...." "In other words, a rule is '[a]n agency statement of policy or interpretation of law of future effect which acts on unnamed and unspecified persons or facts.'" *Branson,* 888 S.W.2d at 720 (citing, *Missourians for Separation of Church and State v. Robertson,* 592 S.W.2d 825, 841 (Mo.App.1979)). "In contrast to a rule, an adjudication is '[a]n agency decision which acts on a specific set of accrued facts and concludes only them.'" *Id.* An adjudication results from a "contested case." A "contested case" means a proceeding before an agen-

cy in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing. Section 536.010(2). Whether a case is classified as a contested or noncontested case is not left to the discretion of the agency but is to be determined as a matter of law. *State ex rel. Valentine v. Board of Police Comm'rs of Kansas City,* 813 S.W.2d 955, 957 (Mo.App.1991). The key to the classification of contested and noncontested cases is the hearing requirement. *Id.* A contested case is one in which a proceeding is contested in a hearing because of some requirement by law. *Hayward v. City of Independence,* 967 S.W.2d 650, 652 (Mo.App.1998). Appellants objection to Annual Wage Order No. 4 was a contested case and as such, an adjudication. Section 290.262.4.[3] contained the applicable hearing requirement. A hearing was held, a proper record was maintained, procedural formalities were observed and the written decision contained findings of fact and conclusions of law. As a contested case, the Commission's order sustaining Appellant's objection only applied to the parties, Section 536.010(2), to the suit and only for the duration of Annual Wage Order No. 4. Section 290.262.1.[4]

### The Adjudication did not make a Final Determination of the Prevailing Wage

◼ The objection filed by MTA and the hearing held by the Commission were provided for not only by the regulation cited herein, but also by Section 290.262.1, which says that the Department shall ascertain wage rates paid generally and "by the tenth of March each year, make an initial determination for each occupational title within the locality." A certified copy of that initial determination is filed with the secretary of state, Section 290.262.2,

and within 30 days of that filing, any person "affected thereby may object in writing" by filing a notice with the department stating the specific grounds of the objection. Section 290.262.3. "If no objection is filed, the determination is final after 30 days." *Id.* The department must have a hearing within 60 days of receipt of the objection, with at least 10 days written notice. Section 290.262.4. "At the hearing the department shall first introduce in evidence the investigation it instituted and the other facts which were considered at the time of the original determination which formed the basis for its determination. The department, or the objector, or any interested party, thereafter may introduce any evidence that is material to the issues." Section 290.262.5. Within 20 days of concluding the hearing, the department must rule on the written objection, making the final determination and must immediately file a copy of the final determination with the secretary of state and all parties. Section 290.262.6. This final decision of the department is subject to review under Chapter 536. Section 290.262.7.

Following this statute, the Division of Labor Standards made its initial determination of the prevailing wages for Communications Technician and filed it with the secretary of state. MTA filed its written objection, and the Commission set a hearing after allowing IBEW to intervene. The initial determination of prevailing wage rates was based upon the mode method of statistical analysis. *Branson,* 888 S.W.2d at 721. The prevailing wage rate for a given occupational title was the actual wage most frequently paid in the locality:

> For example, suppose that during the past year hod carriers in Taney County received four different hourly rates of

---

**3.** "After the receipt of the objection, the department shall set a date for a hearing on the objection.... "

**4.** A final determination applicable to every locality to be contained in an annual wage

order shall be made annually on or before July first of each year **and shall remain in effect until superseded by a new annual wage order** or as otherwise provided in this section. (emphasis added).

pay: $10, $11, $12 and $15. Suppose also that, of all the hours hod carriers reportedly worked during the year, 20 percent were at the $10 rate, 15 percent were at the $11 rate, 35 percent were at $12, and 30 percent were at $15. The prevailing wage—the actual wage most frequently paid—would therefore be $12 per hour.

*Id.* at 720. The prevailing wage was a certain rate—ascertained as outlined above—which applied to a certain occupational job title. There were different rates for different job titles. Here, the Division, in the initial determination, set forth the rate applying to each occupational job title. Thus, when MTA objected to the initial determination of the Division, it had the burden of persuading the Commission that its objection should be adopted by the Commission as the "final" determination. 8 CSR 30–3.060. MTA provided a detailed amended occupational title for Communication Technician. MTA produced no evidence regarding wages paid under this amended occupational title. Colleen Baker, Director of the Division of Labor Standards testified at the hearing:

Q: If the Commission should determine that it is necessary to change definitions in the occupational title rule will that impact on the prevailing wage rate ?

A: Yes, if the definition is changed the prevailing wage rate could change for any individual county. **The wage rate would have to be re-computed using the new definition to determine which hourly rate has the most number of hours submitted.** In some counties changing the definition will have no impact on the rate, in other counties it may make a difference in the rate. The Commission may have difficulty determining the rate because the parties submitted information based upon the definition as published and may not have submitted the wage information corresponding to the new definition. It may be impossible for the Commission to determine the prevailing wage rate using a new definition.

The Commission's order changed the occupational title of Communication Technician without also determining the prevailing wage for that changed occupational title. Under Section 290.262, the department is charged with making a final determination of the prevailing wage in each locality for each separate occupational title. Upon timely filing of an objection to the initial determination, the Commission must make that final determination after hearing. Here, the Commission has discharged only half of its duty. Since the Commission changed the work description for an occupational title, the Commission must also determine the appropriate prevailing wage rate for that newly defined occupational title. The Commission did not hear any evidence regarding the number of hours worked, or the wages actually paid, which would determine the prevailing wage applicable to the amended occupational title, nor did the Commission make a finding that such evidence was unnecessary. We agree with the Division Director, Colleen Baker, who testified that if the Commission changed the occupational title, the wage rate would have to be recomputed. The statute requires a prevailing wage to be determined for each occupational title. As noted by the trial court, the periodic surveys required to determine the Prevailing Wage Law under Section 290.210, et seq., require the consideration of hours performed for work of a similar character and the Occupational Title Rule defines an occupational title on the basis of the various categories of work of a similar character, including Communication Technician and electrician.

We need not reach Appellant's third point, as consideration of the first two is dispositive.

## Conclusion

We conclude that the Commission order was an adjudication, binding only on the parties thereto, and that this adjudication

did not make a final determination of the prevailing wage for Communication Technician as required by statute. Under our standard of review, the Commission order was unlawful in that it did not fully perform its statutory duty under Section 290.262. We also conclude that Annual Wage Order No. 4 has been superseded. Thus, the decision of the Commission is upheld insofar as it defines communication technician, and the case is remanded to the Commission to set the prevailing wage for Communications Technician, and to decide, consistent with this opinion, any issues remaining between the parties arising from the now superseded Annual Wage Order No. 4.

All concur.