NO. 07-06-0285-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 28, 2007

_____

HARRIET LESIKAR,

Appellant

v.

EOG RESOURCES, INC.,

Appellee

_____

FROM THE 188TH DISTRICT COURT OF GREGG COUNTY;

NO. 2003-2305-A; HON. DAVID BRABHAM, PRESIDING

_____

***Opinion***

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Before us is an appeal involving a written Rule 11 settlement agreement. After the parties executed the document, the trial court attempted to enforce what it believed to be its terms, but in doing so exceeded the scope of the accord, said Harriet Lesikar. EOG Resources, Inc. disagreed. We reverse and remand the cause.

*Background*

The suit involved a mineral interest Lesikar inherited and her attempt to have EOG acknowledge its extent. Also sought were damages reflecting the deficiencies in money due her for gas taken under one or more leases encumbering the property. Upon joining

issue, the litigants executed the aforementioned Rule 11 agreement purporting to settle the matter. It consisted of the following terms:

> 1) EOG Resources, Inc. . . . will pay $22,500.00 in full and final settlement of any and all claims or allegations brought or which could have been brought by your client, Harriet Lesikar regarding the leases made the basis of her lawsuit;
>
> 2) EOG will transfer to Harriet Lesikar an additional 0.0063819 working interest and 0.00518475 net revenue interest on the Lee B Gas Unit;
>
> 3) Harriet Lesikar will immediately file a Motion to Dismiss With Prejudice the claims lawsuit filed against EOG; and
>
> 4) both parties will execute the necessary documentation, such as stipulation of interest, releases, etc., in order to finalize the dispute.

Though dated August 18, 2005, the letter agreement was file-marked by the trial court clerk on September 16, 2005. Thereafter, cross motions for summary judgment were filed. Each litigant sought to enforce the agreement as written, but neither could agree upon its scope. Lesikar thought it only settled claims that had matured at the time the document became effective and that the possibility of having to recoup future, and as yet unmatured, overcharges was omitted. EOG believed it resolved all claims of Lesikar, both those existing and those to accrue in the future.

Upon hearing the cross motions, the trial court granted that of EOG. Thus, it ordered that 1) "EOG . . . pay into the Registry of the Court . . . $22,500 in full and final settlement of any and all claims or allegations brought or which could have been brought by . . . Lesikar regarding the leases . . .," 2) EOG . . . effect a transfer to . . . Lesikar . . . of an additional 0.0063819 working interest and 0.00518475 net revenue interest on the Lee B Gas Unit . . .," and 3) the conveyance become effective upon Lesikar's execution of "a. [s]tipulation of interest; b. COPAS or other document indicating an agreed lease overhead charge; and c. [o]ther necessary documents finalizing the parties' dispute."

2

*Issues*

The scope of the Rule 11 agreement underlies the entire controversy before us. We construe such agreements by attempting to garner the parties' intention through the words used, the surrounding circumstances from which the agreement arose, the state of and allegations in the pleadings, and the attitude of the parties with respect to the issues. *Sitaram v. Aetna U.S. Healthcare of North Texas, Inc.*, 152 S.W.3d 817, 824 (Tex. App.–Texarkana 2004, no pet.); *Herschbach v. Corpus Christi*, 883 S.W.2d 720, 734 (Tex. App.–Corpus Christi 1994, writ denied). With this said, we turn to the agreement and circumstances of record.

Per its terms, the $22,500 payment was to be made in full and final settlement of "any and all claims or allegations brought or which could have been brought by your client . . . regarding the leases made the basis of her lawsuit." The claims of Lesikar actually brought were not only of effort to have EOG recognize the extent of her interest in the property but also of effort to recoup "charges made . . . against the wells in question appear[ing] to be unreasonable and improperly charged against the wells." So too did she seek damages purportedly resulting from "overcharging for services." As can be seen, these particular allegations refer to past, as opposed to future, charges against the wells.

Moreover, we cannot ignore the obvious circumstance that the economic or business relationship between Lesikar and EOG was to be ongoing, so long as the mineral leases remained in existence. Not only was this circumstance existent when the agreement was executed, but also it differs from situations wherein a settlement arises from attempts to end a business relationship. The latter contemplates a sense of finality between the parties to the accord. The former does not. And, given that the relationship was to continue, our adopting EOG's interpretation of the Rule 11 document would

3

effectively preclude Lesikar from complaining about any omissions, errors or the like committed by EOG down the road. In effect, EOG would have a license to act with impunity *viz* the charges it makes against Lesikar's interest.

So too do we recognize that when obligations are ongoing (such as the duty to make periodic payments of money), claims for their breach normally do not accrue until default occurs. *See Slusser v. Union Bankers Ins. Co.,* 72 S.W.3d 713, 717 (Tex. App.–Eastland 2002, no pet.) (stating that when a duty exists to make periodic payments, a separate cause of action arises for each missed payment). And, without default, there is no claim. This is of import when considered against the framework of the Rule 11 agreement at bar. Again, the $22,500 was payment to resolve "allegations brought or *which could have been brought*." (Emphasis added). Claims that have yet to accrue when the settlement was reached because default had yet to occur could not have been brought in the lawsuit. Logic and rules of jurisdiction dictate that one cannot sue for damages arising from conduct that has never occurred. And while parties can release unknown claims and damages that arise in the future, *Keck, Mahin & Cate v. National Fire Union Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000), we hesitate to read such an expansive intent into a document lacking words expressly indicative of such an intent and contemplating an ongoing business relationship.

In short, that Lesikar was attempting to recover for overcharges that had been assessed, that the business relationship between her and EOG was ongoing, and that claims normally cannot be prosecuted until default occurs lead us to hold that EOG was not insulated from suits regarding overcharges or misconduct occurring after the Rule 11 agreement at issue was executed. To the extent that the trial court held otherwise, it erred. So too did it err if by requiring Lesikar to sign a "COPAS or other document indicating an agreed lease overhead charge," it sought to effectuate such a release. Yet, therein lies

4

another problem for neither the "COPAS or other document" mentioned are part of the record before us.[1]  Given that, we know nothing of their terms or effect.  Nor do we know whether their execution was "necessary . . . in order to finalize the dispute" given the absence of evidence on the subject.  Again, both EOG and Lesikar agreed to execute only those documents deemed "necessary" to end the existing controversy.  So, without knowing the terms of the "COPAS or other document" and their impact on the dispute, we can hardly say that EOG satisfied its summary judgment burden of proving, as a matter of law, that their execution was necessary.  Nor can we say that their execution was unnecessary.  Simply put, the issue remains an open question.

Accordingly, we reverse the final judgment of the trial court and remand the cause for further proceedings.


.                                                          Brian Quinn
                                                              Chief Justice

---

[1]A COPAS does appear in the clerk's record, but it does not appear to be the document that EOG is requesting Lesikar execute.  A COPAS is also included in the appendix to EOG's brief.  However, documents attached to a brief which are not a part of the official appellate record may not be considered by the court. *Randle v. Wilson,* 26 S.W.3d 513, 515 n.1 (Tex. App.–Amarillo 2000, no pet.).