OPINION

 

No. 04-09-00750-CV

 

Anastacio G. GARZA
and Barbara T. Garza,

Appellants

 

v.

 

Alejandro E. VILLARREAL
Jr., Alfonso J. Garza, Pedro A. Gonzalez, Olga V. Guinee, Cristobal Villarreal,
and Huisache Cattle Company, Ltd.,

Appellees

 

From the 111th
Judicial District Court, Webb County, Texas

Trial Court No. 2007-CVF-001899-D2

Honorable Raul
Vasquez, Judge Presiding

 

Opinion by:   Karen Angelini, Justice

 

Sitting:                     Karen Angelini, Justice

                     Phylis
J. Speedlin, Justice

                     Rebecca
Simmons, Justice

 

Delivered and
Filed:  February 2, 2011

 

AFFIRMED IN
PART, REVERSED AND RENDERED IN PART

 

           The parties in this case are owners of
tracts of land in the Zeferino Villarreal Pasture of the El Huisache Ranch
located in Webb County, Texas. Appellant Anastacio G. Garza[1]
brought claims against Alejandro E. Villarreal Jr., Alfonso J. Garza, Pedro A.
Gonzalez, Olga V. Guinee, and Cristobal Villarreal, (hereinafter referred to
collectively as “the Villarreals”), and against Huisache Cattle Company, Ltd.
to enforce a right of first refusal or “preference right” as to the sale of
land in the El Huisache Ranch. The Villarreals responded to the suit, asserting
Garza had already assigned his preference right to Huisache. The parties went
to mediation, agreed to settle their claims, and executed a settlement
agreement that met the requisites of Rule 11 of the Texas Rules of Civil
Procedure. Thereafter, a dispute arose concerning the meaning of paragraph 3 of
the agreement, which, among other things, suspends the preference right
requirement for some transactions. The Villarreals and Huisache filed a motion
to enforce the settlement agreement. Garza filed a motion to enforce or to
clarify the settlement agreement. The trial court held a hearing, granted the
Villarreals’s and Huisache’s motion to enforce, and ordered Garza to pay
attorney’s fees incurred in prosecuting the motion to enforce the settlement
agreement. The trial court later signed a final judgment implementing the
settlement agreement and Garza appealed. 

On appeal, Garza argues
the trial court’s judgment must be reversed because the parties did not intend
Huisache to be included in paragraph 3 of the agreement. He also argues (1) the
settlement agreement is unenforceable because it lacks consideration, (2) the
settlement agreement is unenforceable because of mutual mistake, (3) the trial
court should have granted his motion to clarify the settlement agreement, and
(4) the trial court erred in awarding attorney’s fees. We reverse the judgment
as to attorney’s fees, but affirm the judgment in all other respects.

Background

           A
detailed explanation of the background facts is necessary to understand and
analyze the issues presented in this case. 

1.    The
Creation and Assignment of Preference Rights

           In
1987, the owners of the Zeferino Villarreal Pasture of the El Huisache Ranch
executed a partition deed, which partitioned the ranch’s surface acreage into
five shares. At the time, all of the owners were members of the Villarreal
family. The deed contained a right of first refusal clause entitled “Preference
Right.” This preference right clause granted each interest owner the right to
purchase any other interest owner’s share in the El Huisache Ranch upon the
same terms as offered another potential buyer. The deed required interest
owners contemplating a sale of any share of the El Huisache Ranch to notify the
other interest owners of the terms of any potential sale, and give them the
opportunity to purchase the share under the same terms. 

           In 1988, Huisache, which was not a
party to the 1987 partition deed, purchased share five of the El Huisache
Ranch. 

           In 1993, the appellant in this case,
Garza, inherited part of share one of the El Huisache Ranch. A year later, in
1994, Garza and Huisache entered into a transaction, whereby Garza and Huisache
sold and exchanged several tracts of land. As part of this transaction, Garza
executed a document entitled, “Irrevocable Assignment of Preference Right.” In
the document, Garza purported to transfer all of his preference rights to
Huisache. The assignment stated it was irrevocable. 

           In 2007, Garza inherited part of share
three of the El Huisache Ranch. Alejandro E. Villarreal Jr., Alfonso J. Garza,
Pedro A. Gonzalez, and Olga V. Guinee, who also inherited part of share three
of the El Huisache Ranch, agreed to sell their interests in share three to
Cristobal Villarreal. However, Garza desired to buy these interests. When Garza
notified Alejandro E. Villarreal Jr., Alfonso J. Garza, Pedro A. Gonzalez, and
Olga V. Guinee that he was exercising his preference right to their interests
in share three, they refused to sell their interests to Garza.

           In 2008, Garza signed a document
purporting to revoke his “Irrevocable Assignment of Preference Right.” Garza
took the position that the preference right was not assignable under the terms
of the deed, and therefore, the “Irrevocable Assignment of Preference Right”
previously executed by him was void. 

2.    The
Underlying Lawsuit and the Mediated Settlement Agreement

           On October 26, 2007, Garza filed the
underlying suit seeking to enforce the preference right contained in the 1987
partition deed. The suit included claims for specific performance and breach of
contract against Alejandro E. Villarreal Jr., Alfonso J. Garza, Pedro A.
Gonzalez, and Olga V. Guinee. In response, Alejandro E. Villarreal Jr., Alfonso
J. Garza, Pedro A. Gonzalez, and Olga V. Guinee, maintained that the preference
right claimed by Garza was owned by Huisache by virtue of the “Irrevocable
Assignment of Preference Right” signed in 1994. 

           Garza then amended his pleadings to (1)
include Huisache as a party, (2) add a claim for declaratory judgment, and (3)
add claims for conspiracy and fraud in the inducement and execution of the
“Irrevocable Assignment of Preference Right” against Huisache. The declaratory
judgment claim requested interpretation of the preference right clause in the
1987 partition deed as it related to the assignment of such rights. The
Villarreals and Huisache countered by amending their pleadings to add a
counterclaim for declaratory judgment as to the parties’ rights, status, and
legal relations with regard to the “Irrevocable Assignment of Preference
Right.”

Eventually, the parties
went to mediation, agreed to settle their claims, and executed a Rule 11
settlement agreement. 

3.    The
Enforcement Proceedings

When a dispute arose
concerning the meaning of the second sentence in paragraph 3 of the agreement,
the parties filed competing motions to enforce the settlement agreement. The disputed
sentence states: “Further, the Parties agree tha[t] an exchange or swap of
lands between owners of the lands covered by the 1987 Partition Deed shall not
trigger the applicability of the preference rights provision set forth in the
1987 Partition Deed with regard to said swapped or exchanged lands.” 

In their motion to
enforce the settlement agreement, the Villarreals and Huisache alleged the
parties’ settlement agreement was a binding and enforceable contract. The
Villarreals and Huisache alleged Garza breached the settlement agreement by
failing to execute the “Waiver of Preference Right” document in accordance with
the terms of the agreement. The Villarreals and Huisache asked the trial court to
order Garza to (1) execute the “Waiver of Preference Right” document, (2)
execute all documents necessary to effectuate the terms of the settlement
agreement, and (3) pay attorney’s fees related to the enforcement motion. The
motion also asked the trial court for further relief to which the Villarreals
and Huisache showed themselves entitled to receive.

Garza also filed a motion
to enforce or clarify the settlement agreement. Garza asserted the parties to
the mediated settlement agreement “did not intend for Paragraph 3 to be
interpreted to mean that Huisache [] is a preference right holder and entitled
to be a party to that specific agreement.” Garza further asked the trial court
to interpret the 1987 partition deed and to “clarify and/or interpret the
meaning of Paragraph 3.”

At the enforcement hearing,
Huisache asked the court to enforce the terms of the settlement agreement and
to order Garza to sign the “Waiver of Preference Right” document. Huisache
called one of its lawyers, Raul Leal, who testified about why the parties
included paragraph 3 in the settlement agreement. For his part, Garza called an
expert witness who testified about the meaning of the 1987 partition deed, and
provided his legal opinion that Huisache could not have acquired any preference
rights through its purchase of tracts covered by the 1987 partition deed. Garza
also explained that he refused to sign the “Waiver of Preference Right” because
it was unnecessary and because it attempted to confer a preference right on
Huisache which it did not have under the 1987 partition deed. Both parties also
called witnesses who testified about attorney’s fees. 

The trial court granted
Huisache’s motion for enforcement and denied Garza’s motion to enforce or
clarify. The trial court found that Garza breached the terms of the settlement
agreement by his failure to recognize and acknowledge that (1) Huisache is one
of the parties as that term is defined and used in the settlement agreement,
(2) Huisache is one of the owners of the lands covered by the 1987 partition
deed, and (3) an exchange or swap of lands between owners of the lands covered
by the 1987 Partition Deed, including Huisache, shall not trigger the
applicability of the preference right provision in the 1987 Partition Deed with
regard to said swapped or exchanged lands. The trial court also awarded the Villarreals
and Huisache $3,500.00 in attorney’s fees for prosecuting their motion to
enforce. The trial court, however, did not order Garza to execute the “Waiver
of Preference Right” document. 

Enforcement of the Settlement Agreement

In his first issue, Garza
argues the trial court erred in granting the Villarreals’s and Huisache’s
motion to enforce the settlement agreement because the parties did not intend
to include Huisache in the second sentence of paragraph 3 of the agreement, and
thereby suspend the preference right requirement as to Huisache. In evaluating
this issue, Garza urges us to look not only to the plain language of the
settlement agreement, but also to the circumstances surrounding the signing of
the settlement agreement. Garza does not contend that the settlement agreement is
ambiguous. Rather, Garza argues that his interpretation of the settlement
agreement is the only objectively reasonable interpretation of the settlement
agreement. 

“If parties reach a
settlement agreement and execute a written agreement disposing of the dispute,
the agreement is enforceable in the same manner as any other written contract.”
Tex. Civ. Prac. & Rem. Code Ann.
§ 154.071(a) (West 2005). “A settlement agreement is a contract, and its
construction is governed by legal principles applicable to contracts
generally.” Donzis v. McLaughlin, 981 S.W.2d 58, 61 (Tex. App.—San
Antonio 1998, no pet.).

A court’s primary concern
in interpreting a contract is to ascertain the true intent of the parties as
expressed in the contract. Seagull Energy E & P, Inc. v. Eland Energy,
Inc., 207 S.W.3d 342, 345 (Tex. 2006). Courts interpret Rule 11 settlement
agreements based on the intention of the parties from the language of the
entire agreement in light of the surrounding circumstances, including the state
of the pleadings, the allegations therein, and the attitude of the parties with
respect to the issues. Lesikar v. EOG Resources, Inc., 236 S.W.3d 457,
458-59 (Tex. App.—Amarillo 2007, no pet.); In re Acevedo, 956
S.W.2d 770, 775 (Tex. App.—San Antonio 1997, orig. proceeding). Although
courts may consider the facts and circumstances surrounding the execution of
the settlement agreement, such consideration “is simply an aid in the
construction of the contract’s language.” Sun Oil Co. v. Medeley, 626
S.W.2d 726, 731 (Tex. 1981). “If, in the light of surrounding circumstances, the
language of the contract appears to be capable of only one meaning, the court
can then confine itself to the writing.” Id. 

In construing a contract,
courts examine the instrument as a whole in an effort to harmonize and give
effect to all the provisions of the contract so that none will be rendered
meaningless. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex.
2003). Courts give terms their plain, ordinary, and generally accepted meaning
unless the contract shows the parties used them in a technical or different
sense. Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 158-59 (Tex.
2003). In construing a settlement agreement, a court may not rewrite the
contract or add to its language. Id. at 162.

Ambiguity is a question
of law, which a court may determine regardless of whether the parties have
raised the issue. See Coker v. Coker, 650 S.W.2d 391, 392-95 (Tex. 1983)
(holding settlement agreement was ambiguous despite the parties’ assertion to
the contrary). Lack of clarity does not create an ambiguity; nor does an
ambiguity arise merely because the parties to the agreement offer different
interpretations of the agreement. DeWitt County Elec. Coop., Inc. v. Parks,
1 S.W.3d 96, 100 (Tex. 1999). An ambiguity arises when an agreement is
susceptible to more than one reasonable meaning after the application of
established rules of construction. Univ. Health Servs., Inc. v. Renaissance
Women’s Group, P.A., 121 S.W.3d 742, 746 (Tex. 2003). If the contract
language can be given a certain or definite meaning, then the contract is not
ambiguous and the court should interpret it as a matter of law. Id. 

Here, the key provisions
of the settlement agreement, which was signed by the all of the parties and
their attorneys, are: 

Huisache shall waive its right-of-first
refusal for the purchase of Villarreal Lands set forth in items 2 and 4 below
and shall endorse and ratify the Revocation of the Irrevocable Assignment of
Preference Rights dated April 24, 2008, and recorded in Volume 2569, Page 359
of the Webb County Deed Records, executed by Garza.

           ….

 

The Parties (other than Garza) shall
waive their preference rights granted in the 1987 Partition Deed (as defined
below) with respect to Tract 2 depicted in the attached plat. Further, the
Parties agree than (sic) an exchange or swap of lands between owners of the
lands covered by the 1987 Partition Deed shall not trigger the applicability of
the preference rights provision set forth in the 1987 Partition Deed with
regard to said swapped or exchanged land.

….

 

Cristobal, Garza and Villarreal shall
grant to Huisache the preferential right to purchase any and all lands within
the Zeferino Villarreal Pasture in substantially the same form as the
preference rights set forth in the 1987 Partition Deed. Such preferential
rights shall only be triggered by any proposed sales to any party that is not a
Villarreal Heir. For purposes of this Rule 11 Agreement, a Villarreal Heir
shall mean Anastacio Garza, Cristobal Villarreal, Anna Worland, Irma Torres,
Alfonso Villarreal and their respective heirs.

….

 

Garza, Villarreal, Cristobal and
Huisache shall release each other from any and all claims which have been made
or which could have been made by the Parties in this Cause.

….

The Parties shall execute all necessary documents to effectuate the
foregoing            terms…. 

 

(emphasis added). 

Consistent with contract
construction principles, we examine the language of the settlement agreement. The
introductory paragraph of the settlement agreement expressly defines the word
“Parties” to include Huisache. The first sentence of paragraph 3 provides that,
“The Parties (other than Garza) shall waive their preference rights granted in
the 1987 Partition Deed (as defined below) with respect to Tract 2 depicted in
the attached plat.” Nevertheless, Garza argues, and we agree, that this
sentence—in and of itself—confers no additional rights on Huisache. Obviously, Huisache
could not waive preference rights it did not have. Thus, even though Huisache
is included in the definition of “Parties,” if Huisache did not have any
preference rights under the 1987 partition deed, it could not waive any
preference rights under the deed. 

The second sentence of
paragraph 3, which is at the heart of the parties’ dispute, provides, “Further,
the Parties agree than (sic) an exchange or swap of lands between owners of the
lands covered by the 1987 Partition Deed shall not trigger the applicability of
the preference rights provision set forth in the 1987 Partition Deed
with regard to said swapped or exchanged lands.” Here, the plain language
of the agreement shows Huisache was intended to be included in this provision. At
the time of the agreement, Huisache was an owner of the lands covered by the
1987 partition deed. Thus, this provision suspends the preference right
requirement as to any exchange or swap of lands with Huisache. 

On appeal, the crux of
Garza’s argument is that paragraph 3 contemplates only family members swapping
or exchanging properties within the Zeferino Villarreal Pasture among
themselves. Garza argues, “Reading the two paragraphs together reveals the
treatment of Huisache as a third party and an intent to exclude Huisache from
the free exchange of swap of Pasture lands as among the family.” Garza further
contends the trial court’s findings and judgment are erroneous because the
parties could not have intended Huisache to be included in paragraph 3 because
to do so would have invested Huisache with greater rights than it claimed as
part of the underlying litigation. As part of this argument, Garza points out
that Huisache never took the position in the underlying litigation that it
derived any preference rights from the 1987 partition deed; instead, it merely
argued that it derived its preference rights from the assignment.[2] 

Garza’s argument is premised
in part on a misinterpretation of the trial court’s finding and its judgment.
The parties did not reach a settlement agreement that determined the parties’
rights under the 1987 partition deed. And, the trial court’s judgment, like the
settlement agreement, did not determine the parties’ rights under the 1987
partition deed. Nothing in paragraph 3 confers a preference right on Huisache,
and the trial court did not find that it did. Rather, the trial court found the
second sentence of paragraph 3 suspends the preference right requirement in the
1987 partition deed as to owners of lands covered by the 1987 partition deed.
Huisache, as an owner of share three in the 1987 partition deed, clearly is an
owner of the lands covered by the 1987 partition deed. Thus, any swap or
exchange of lands between Huisache and another owner of the lands covered by
the 1987 partition deed suspends the preference right provision set forth in
the 1987 partition deed. 

We conclude the language
of the settlement agreement can be given a certain or definite meaning. We
further conclude that the settlement agreement is unambiguous. Generally, when
the terms of a written contract are plain and unambiguous, parol evidence is
inadmissible to vary the terms of the agreement or to show the construction
placed upon them by the parties at the time of its making. Murphy v.
Dilworth, 151 S.W.2d 1004, 1005 (1941); Pitman v. Lightfoot, 937
S.W.2d 496, 516 (Tex. App.—San Antonio 1996, writ denied). Although
Garza invites us to examine and construe the terms of the 1987 partition deed
in conjunction with construing the settlement agreement, we decline to do so.
Because the settlement agreement is unambiguous, the terms of the 1987
partition deed are parol evidence. For the same reason, we decline to consider
Leal’s testimony about the parties’ intent in including paragraph 3 in the
settlement agreement. 

We also disagree with
Garza’s contention that we are required to construe the terms of the 1987
partition deed because the settlement agreement incorporates it by reference.
The settlement agreement does not incorporate the terms of the 1987 partition
deed by reference. 

Moreover, contrary to
Garza’s assertions, paragraph 3 and paragraph 10 are not in conflict. The
purpose of sentence one in paragraph 10 is to have the owners of the tracts
covered by the 1987 partition deed grant Huisache limited preference rights “in
substantially the same form as the preference rights set forth in the 1987
Partition Deed.” The purpose of sentences two and three of paragraph 10 is to
preclude the use of these preference rights as to sales involving Villarreal
heirs, including Garza. As previously discussed, the purpose of sentence one in
paragraph 3 is to have the parties who possessed preference rights under the 1987
partition deed waive those preference rights with respect to tract two. The
purpose of sentence two in paragraph 3 is to suspend the preference right
requirement between owners of the tracts of land covered by the 1987 partition
deed. 

Garza argues his
interpretation of the second sentence of paragraph 3—that the parties did not
intend to suspend the preference right requirement as to exchanges or swaps
with Huisache—is the only reasonable interpretation that can be given this
sentence. The implication of Garza’s argument is that the trial court’s
contrary interpretation was unreasonable and, therefore, must be avoided. We
disagree. “We construe contracts ‘from a utilitarian standpoint bearing in mind
the particular business activity sought to be served’ and ‘will avoid when
possible and proper a construction which is unreasonable, inequitable, and
oppressive.’” Frost Nat’l Bank v. L & F Dist., Ltd., 165 S.W.3d 310,
312 (Tex. 2005) (quoting Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527,
530 (Tex. 1987)). Based on the express language of the agreement, we conclude
the parties intended Huisache to be included in the second sentence of
paragraph 3. Nothing from the settlement agreement as written or from the
surrounding circumstances supports a different interpretation.

We conclude, as the trial
court did, that the settlement agreement provides that an exchange or swap of
lands between the owners of the lands covered by the 1987 partition deed,
including Huisache, shall not trigger the applicability of the preference right
provision set forth in the 1987 partition deed with regard to said swapped or
exchanged lands. This interpretation is consistent with the plain language of
the settlement agreement and the circumstances under which the settlement
agreement was written. In addition, this interpretation is consistent with other
parts of the settlement agreement. We hold the trial court did not err in
granting the Villarreals’s and Huisache’s motion to enforce the settlement
agreement. 

Lack of Consideration

The Garzas argue the settlement
agreement was unenforceable because it was not supported by valid consideration.

“Consideration consists
of either a benefit to the promisor or a detriment to the promisee.” Robinson
v. Nat’l Autotech, Inc., 117 S.W.3d 37, 41 (Tex. App.—Dallas 2003, pet.
denied). A contract lacking in consideration is unenforceable. Id. The
surrender of a legal right constitutes valid consideration to support a
contract. In re Alamo Lumber Co., 23 S.W.3d 577, 579 (Tex. App.—San
Antonio 2000, orig. proceeding [mand. denied]). Giving up the right to have a
court decide a disputed issue is sufficient consideration to support a contract.
Lampkin v. Lampkin, 480 S.W.2d 35, 37 (Tex. Civ. App.—El Paso 1972, no
writ). The compromise of doubtful and conflicting claims is good and sufficient
consideration to uphold a settlement agreement. Citgo Refining and Mktg.,
Inc. v. Garza, 187 S.W.3d 54, 61 (Tex. App—Corpus Christi 2005, pet. dism’d
by agreement) (quoting McDonough v. First Nat’l Bank, 34 Tex. 309, 320
(1871)). 

Here, the record shows
there was valid consideration to support the settlement agreement. The
settlement agreement provisions show Huisache waived its preference right as to
two sales, ratified Garza’s revocation of the assignment, and released Garza
and the other defendants from all claims that were made in or could have been
made in the cause. Based on the foregoing, we conclude there was valid consideration
to support the settlement agreement.

Mutual Mistake

The Garzas also argue the
settlement agreement was unenforceable based on mutual mistake. 

Mutual mistake is an
affirmative defense that must be pleaded and proved. Tobbon v. State Farm
Mut. Auto. Ins. Co., 616 S.W.2d 243, 245 (Tex. Civ. App.—San Antonio 1981,
writ ref’d n.r.e.). A mutual mistake is one common to all parties, wherein each
labors under the same misconception respecting a material fact, the terms of
the agreement, or the provision of a written instrument designed to embody such
an agreement. Allen v. Berrey, 645 S.W.2d 550, 553 (Tex. App.—San
Antonio 1982, writ ref’d n.r.e.) (citing Capitol Rod & Gun Club v. Lower
Colorado River Auth., 622 S.W.2d 887, 892 (Tex. Civ. App.—Austin 1981, writ
ref’d n.r.e.)). In order for the defense of mutual mistake to be sustained,
there must be fact issues raised to show that all parties to a contract were
acting under the same understanding of the same material fact. Id. at
553-54 (citing Newsom v. Starkey, 541 S.W.2d 468 (Tex. Civ. App.—Dallas
1976, writ ref’d n.r.e.)). Here, the record shows Garza presented no evidence
to establish the defense of mutual mistake. Thus, the settlement agreement was
not unenforceable based on mutual mistake.

Motion to Clarify

Garza’s initial motion to
enforce or clarify included only a general request that the trial court clarify
the settlement agreement. Later, in his written objections to the proposed
order enforcing the settlement agreement, Garza expanded his clarification
request. In these objections, Garza again made a general request for clarification
arguing that “many questions remain[ed]” about the interpretation of the
settlement agreement. In addition, Garza asked that another paragraph be added to
the settlement agreement.[3]


As we have previously
held, the settlement agreement in this case was clear and definite. Thus, there
was no reason for the trial court to clarify its terms. In addition, Garza asked
the trial court to add to the language of the settlement agreement. The trial
court, however, had no authority to add to the language of the settlement
agreement. See Schaefer, 124 S.W.3d at 162. In construing a
settlement agreement, courts may not rewrite the agreement or add to its
language. See id. (declining to rewrite the parties’ contract or add to
its language). For these reasons, we conclude the trial court did not err in
denying the motion for clarification.

Attorney’s Fees

In his final issue, Garza
argues that the trial court erred in awarding attorney’s fees because the Villarreals
and Huisache recovered no breach of contract damages.

A party is prohibited
from recovering attorney’s fees unless permitted by statute or by agreement
between the parties. Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299,
311 (Tex. 2006); Travelers Indem. Co. of Connecticut v. Mayfield, 923
S.W.2d 590, 593 (Tex. 1996). In the present case, there was no attorney’s fees
agreement between the parties. And, the applicable statute, section 38.001(8)
of the Civil Practice and Remedies Code, permits attorney’s fees only when
damages have been recovered. Tex. Civ.
Prac. & Rem. Code Ann.
§ 38.001(8) (West 2008); Green Int’l, Inc. v. Solis, 951 S.W.2d 384, 390
(Tex. 1997) (holding plaintiff could not recover attorney’s fees under section
38.001(8) of the Civil Practice and Remedies Code, when it failed to recover
breach of contract damages); see also Intercont. Group P’ship v. K.B.
Home Star, L.P., 295 S.W.3d 650, 653 (Tex. 2009). 

In response to this
issue, the Villarreals and Huisache acknowledge that generally attorney’s fees
cannot be recovered under section 38.001(8) unless the prevailing party also
recovers damages. Nevertheless, the Villarreals and Huisache urge this court to
uphold their award of attorney’s fees, arguing Green Int’l should
be modified to permit recovery of attorney’s fees when a settlement agreement
is enforced by a party but no actual damages are sought. 

As an intermediate
appellate court, however, we are not in a position to evaluate the argument
that the Texas Supreme Court’s holding in Green Int’l should be
modified. “It is not the function of a court of appeals to abrogate or modify
established precedent.” Lubbock Co. v. Trammel’s Lubbock Bail Bonds, 89
S.W.3d 580, 585 (Tex. 2002). As an intermediate court of appeals, we are
obligated to follow the precedents of the Texas Supreme Court unless and until
the high court overrules them or the legislature supersedes them by statute.
Therefore, because the Villarreals and Huisache recovered no damages, we hold
the trial court erred in awarding attorney’s fees. See Green Int’l, 951
S.W.2d at 390; Medistar Corp. v. Schmidt, 267 S.W.3d 150, 165
(Tex. App.—San Antonio 2008, pet. denied) (holding the trial court erred in
allowing the prevailing party to recover attorney’s fees under section 38.001
when it failed to recover breach of contract damages). 

Conclusion

We reverse the part of
the judgment ordering Garza to pay attorney’s fees in the amount of $3,500.00,
and render judgment that the Villarreals and Huisache take nothing on their
claim for attorney’s fees. We affirm the judgment in all other respects. 

Karen Angelini, Justice

 

 

 

 

 

 

 

 

 









[1]Garza’s wife, Barbara T. Garza,
was also a plaintiff below and is an appellant in this case. Anastacio and
Barbara will be referred to collectively as “Garza” in this opinion.

 





[2]At the enforcement hearing,
Huisache’s counsel indicated Huisache acquired preference rights by virtue of
the assignment and the 1987 partition deed. At oral argument, however,
Huisache’s counsel indicated the only way Huisache acquired preference rights
was by virtue of the assignment.





[3]The paragraph was: “Although
the Court finds that Huisache Cattle Company, Ltd., pursuant to the agreements
set forth in paragraph 3 of the Rule 11 Agreement, can swap or exchange lands
covered by and described in the 1987 Partition Deed for other lands covered by
and described in the 1987 Partition Deed without triggering the applicability
of the preference rights provisions set forth in the 1987 Partition Deed with
regard to such swapped or exchanged lands, the lands acquired by Huisache
Cattle Company, Ltd., in compliance with the preference rights provisions of
the 1987 Partition Deed and/or under the provisions of paragraph 3 of the Rule
11 agreement, shall be free of the preference rights provisions of the 1987
Partition Deed and Huisache Cattle Company, Ltd., shall not, as a result of
such acquisitions, acquire any preference rights as to other property conveyed by
and described in the 1987 Partition Deed.”